[Civ. No. 5390.   Fourth Dist.   Mar. 15, 1957.]

KITTY M. LEWIS et al., Appellants, v. NORMAN IRA DOYLE, Respondent.

Glickfeld & Goldstein, Baker, Palmer, Wall & Raymond for Appellants.

Borton, Petrini, Conron & Brown for Respondent.

MUSSELL, J.—This is an action for wrongful death, personal injuries and property damage arising out of an intersection collision between an automobile owned by plaintiff Kitty M. Lewis and operated by her husband, and an automobile owned and operated by defendant Norman Ira Doyle. A jury trial resulted in a verdict against plaintiffs on the complaint and in favor of the defendant. The verdict also awarded defendant damages on his cross-complaint for damage to his automobile. Plaintiffs appeal from the judgment entered in accordance with the verdict of the jury and contend that the trial court erred in its instructions to the jury.

The intersection at which the collision occurred is located approximately one mile north of Lebec, on United States Highway 99. At this point the highway runs generally north and south. It is a through highway and the two northbound traffic lanes, each 12 feet wide, are separated from the two

southbound traffic lanes, each 12 feet in width, by a dividing strip, 48 feet wide. Old United States Highway 99, now a private road, approximately 60 feet wide, enters new Highway 99 from the west and there is a crossing marked by curbing to permit traffic to cross the highway and turn into the northbound traffic lanes. There is a stop sign approximately 45 feet west from the west edge of United States Highway 99 at the intersection and there are several large trees on the west side of the highway north of the intersection. There is a slight crest or hill approximately 700 feet north of the intersection and the highway slopes gradually downward south to the intersection from this crest.

At about 9:15 a. m. on December 3, 1954, plaintiff, Kitty M. Lewis, and her husband left their home at Tejon Lodge, about a mile from the intersection involved, intending to drive to Bakersfield. Plaintiff's husband, James D. Lewis, aged 74, was driving a 1940 Chevrolet two-door sedan. The pavement was damp and it was somewhat cloudy. Lewis approached the intersection from the west on old Highway 99 and stopped at the stop sign 45 feet west of the new highway. He then looked along the highway to the north and proceeded to cross the northbound traffic lanes on the through highway. When his car occupied approximately 10 feet of the inside or east southbound traffic lane, it was struck by defendant's car, then being driven south on the inside southbound traffic lane. Lewis was thrown from his car and received injuries resulting in his death the following day.

Kitty Lewis testified that when they drove up to the stop sign they stopped and ". . . we looked down the highway to the north, and we didn't see anything coming up but the truck; and we both spoke together and says, 'Well, I guess we can make it', or no, 'We can make it', and I think he said the same. I'm not sure, but we spoke the same time, we could make it before the truck got there. So we just started to cross, . . ."

Defendant Doyle, an oil driller, testified that he was traveling south in his Cadillac automobile on United States Highway 99; that after he passed the crest of the hill to the north of the intersection, he passed a truck going in the same direction; that when he was about 300 to 350 feet from the intersection and traveling at about 50 miles per hour, he first saw the Lewis car; that "when I first saw it, it was entering the pavement, not the asphalt pavement itself, just coming on very slowly, and moved across, and I figured, well, that

is plenty of time to get across into the safety zone, but I stepped on the brakes anyway, when it seems like he came to a stop right in my lane, and I just couldn't get stopped quick enough''; that he attempted to turn his car but the wheels were locked and the car would not turn; that as he saw the Lewis car crossing the road, the driver was looking south, until just before the accident he looked in Doyle's direction; that the left front fender of his car hit the rear door of the Chevrolet.

Lawrence M. Newman testified that he witnessed the accident from a point about 350 feet north of the intersection; that he was driving a ''tractor and set of doubles'' southerly on United States Highway 99; that the weather was overcast and it was damp and dark; that when he was approximately 350 feet north of the intersection, he was traveling about 20 miles per hour, and saw the Chevrolet automobile coming into the west side of the truck's lane of traffic; that he first saw the Cadillac when it passed him about 250 or 300 feet north of the intersection. When asked what he saw, Newman replied as follows: ''. . . I saw the Chevrolet approaching the outside lane which would be the west lane in front of me. The driver of that vehicle turned and looked at me, and he could see that he had plenty of clearance, because I was moving so slow; and when he moved out in front of me across my lane into the inside lane, still traveling the inside lane with me going south, this Cadillac came up alongside of me and went past me. Then he applied his brakes and went straight on into it and hit the black Chevrolet car.''

Appellants first assert that the court erred in giving an irrelevant and misleading instruction on brake efficiency. The instruction given was as follows:

''You are instructed that at the time of this accident Section 670(a) of the Vehicle Code of the State of California provided as follows:

'' '670 Brakes. (a) No person shall operate on any highway any motor vehicle or combination of motor vehicle and other vehicle or vehicles of a type subject to registration hereunder unless such motor vehicle or at least one unit of any such combination of vehicles is equipped with brakes adequate to bring such motor vehicle or combination of vehicles to a complete stop when operated upon dry asphalt or concrete pavement surface where the grade does not exceed 1 percent

at the speeds set forth in the following table within the distances set opposite such speeds:

| Miles per hour | Stopping distances |
|---|---|
| 10 | 9.3 feet |
| 15 | 20.8 feet |
| 20 | 37.0 feet |
| 25 | 58.0 feet |
| 30 | 83.3 feet |
| 35 | 113.0 feet |
| 40 | 148.0 feet |
| 45 | 188.0 feet.' " |

There was no evidence in the instant case that the brakes on the Doyle car were defective. However, in *Nelson* v. *Porterville Union High Sch. Dist.*, 117 Cal.App.2d 96, 99 [254 P.2d 945], this court held that an instruction which relates to matters as to which there is no evidence will not justify a reversal unless it has misled the jury to the prejudice of the appellant. And in *Jeffs* v. *LaGore*, 131 Cal.App.2d 181 [280 P.2d 140], in an action by a pedestrian against the driver of an automobile in an intersection accident, where the defendant testified that he was not going over 25 miles per hour, an instruction in the language of section 670 of the Vehicle Code pertaining to adequacy of brakes and maximum stopping distances was held to be proper. It does not appear that the jury in the instant case was misled to the prejudice of appellants by the instruction given and no reversible error appears in this connection. (*Trelut* v. *Kazarian*, 110 Cal.App.2d 506, 512 [243 P.2d 104].)

Appellants' next argument is that the court erred in giving an instruction regarding traffic lanes. In this connection, at the request of the defendant, the trial court gave the following instruction, after reading section 552 of the Vehicle Code:

"The requirements of Vehicle Code section 552 apply to all vehicles traveling upon a through highway and not only to vehicles traveling upon one lane thereof if the highway is divided into more than one lane. Therefore, the duty imposed upon a person entering such a highway to yield the right of way to other vehicles as set forth therein relates to vehicles traveling upon all lanes and not any one particular lane of traffic on said through highway."

Appellants concede that perhaps this instruction might be correct if both the Doyle car and the Newman truck were in sight of Lewis when the latter sought to enter the high-

way and one of the approaching vehicles was an immediate hazard while the other was not, but contend that where, as here, the testimony of both sides was that only the truck was visible, it would be a contradiction in terms to call the hazard created by the Doyle vehicle "immediate." The question of whether it was an "immediate" hazard was one of fact for the jury. It clearly appears that an instruction in the language of section 552 of the Vehicle Code was proper under the circumstances and the quoted part of the charge instructing the jury that section 552 relates to vehicles traveling on all lanes and not on any one particular lane of traffic on said through highway is a correct statement of law. There was evidence that Lewis stopped at a sign 45 feet west of the roadway and then proceeded into the intersection. While he was crossing the southbound traffic lanes, the Doyle car was approximately 300 to 400 feet to the north, traveling in the inside southbound traffic lane. The jury could reasonably infer that the Doyle car was then visible to Lewis and that it was his duty not to pull in front of the Doyle car when an immediate hazard existed.

It is further argued that the court erred in giving an instruction regarding speed. This argument is without merit. The criticized instruction reads as follows:

"The law of this state does not prescribe an absolute speed limit, in terms of so many miles an hour, that was applicable at the time and place of the accident involved in this case. The law does ordain what it calls '*prima facie* speed limits'; and the law says that if the speed of a vehicle upon a highway is not in excess of the *prima facie* limit, such speed is lawful unless clearly proved to be in violation of what is known as the basic speed law; and if the speed of a vehicle upon a highway is in excess of the applicable *prima facie* limit, such speed is unlawful unless proved to be not in violation of the basic speed law.

"However, our law further provides that proof of speed in excess of any *prima facie* limit shall not establish negligence as a matter of law, but that anyone who claims that a speed in excess of such a limit was negligent must, to support such a claim, prove as a fact that such speed was negligent in the circumstances involved.

"The basic speed law to which I have referred provides as follows:

" 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due re-

gard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.'

"The *prima facie* speed limit that was in effect at the time and place of the accident involved in this case was 55 miles an hour."

Appellants cite *Eslick* v. *Leach,* 135 Cal.App.2d 455 [288 P.2d 38], as authority for the proposition that the giving of this instruction was improper and constituted reversible error. However, in *Hardin* v. *San Jose City Lines, Inc.,* 41 Cal.2d 432, 439 [260 P.2d 63], it was held that in an action involving negligence in the operation of a motor vehicle it is proper to give an instruction in the language of section 510 of the Vehicle Code setting forth the basic speed law and to inform the jury that a violation of the statute is negligence; that

"It is proper under section 513 of the Vehicle Code to give an instruction on the prima facie speed limit even though proof of speed in excess of that limit is not enough, standing alone, to show that the vehicle was being operated negligently. This statute, applicable only in civil actions, provides that speed in excess of any prima facie limit declared in section 511 shall not establish negligence as a matter of law and that it is necessary to show as a fact that 'such excess speed' constituted negligence. The words 'such excess speed' clearly refer to an excess over the prima facie limit mentioned in the first part of the section, and it follows that the plaintiff may introduce evidence of the prima facie speed limit in order to show that there was 'such excess speed.' It has been held, accordingly, that in civil cases the prima facie speed limit is a factor to be considered with other pertinent factors and that the plaintiff is entitled to an instruction thereon." (Citing cases.)

In *Guerra* v. *Brooks,* 38 Cal.2d 16 [236 P.2d 807], in an action for damages arising out of a collision between an automobile driven by defendant and a motorcycle operated by plaintiff in an area which was not signposted, it was held to be prejudicial error to fail to give a specific instruction on the relation of signposting to the applicable prima facie speed limit. In *Burch* v. *Valley Motor Lines, Inc.,* 78 Cal.App. 2d 834 [179 P.2d 47], it was held error to refuse to give an instruction based on Vehicle Code, section 511, when the jury was instructed on sections 510 and 513 of said code, which refer to section 511, where the zone on either side of the underpass where the collision occurred was a 55-mile zone,

and where there was evidence that plaintiff was driving at a speed of 25 to 30 miles per hour just before the collision.

■ Appellants' contention that the instruction was prejudicial to them because it required "clear proof" on their part that defendant's speed was negligent is likewise without merit. As is said in *Olson* v. *Union Oil Co.*, 25 Cal.App.2d 627, 629-630 [78 P.2d 446]:

"There are many decisions in civil actions in which the words 'clearly proved' are used. But when they are so used they are to be understood as meaning the preponderance of the evidence." (Citing cases.)

Appellants' last contention is that the court erred in giving repetitive and irrelevant instructions unduly emphatic of the duties of plaintiff and her decedent. While the instructions may in some respects be repetitious, it does not appear they were erroneous statements of the law. The court instructed the jury:

"If in these instructions, any rule, direction or idea be stated in varying ways, no emphasis thereon is intended by me, and none must be inferred by you. For that reason, you are not to single out any certain sentence, or any individual point or instruction, and ignore the others, but you are to consider all the instructions and as a whole, and to regard each in the light of all the others. The order in which the instructions are given has no significance as to their relative importance.

"If during this trial I have said or done anything which has suggested to you that I am inclined to favor the claims or position of any party, you will not suffer yourself to be influenced by any such suggestion.

"I have not expressed, nor intended to express, nor have I intended to intimate, any opinion as to which witnesses are, or are not, worthy of belief; what facts are, or are not established; or what inferences should be drawn from the evidence. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it."

■ The mere repetition of instructions upon the same subject would not constitute reversible error. (*Faeh* v. *Union Oil Co.*, 107 Cal.App.2d 163 [236 P.2d 667]; *Gilbert* v. *Pessin Grocery Co.*, 132 Cal.App.2d 212, 223-224 [282 P.2d 148].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.