[L.A. No. 30156. In Bank. Dec. 10, 1974.]

JOHN B. BERTERO, Plaintiff and Respondent, v.
NATIONAL GENERAL CORPORATION et al.,
Defendants and Appellants.

**COUNSEL**

Murchison, Cumming, Baker & Velpmen, John Baker, Lascher & Rader, Edward L. Lascher, Cummins, White & Breidenbach, James O. White and W. F. Rylaarsdam for Defendants and Appellants.

Bodkin, Breslin & Luddy, Henry G. Bodkin, Jr., and Timothy J. Sargent for Plaintiff and Respondent.

**OPINION**

**WRIGHT, C. J.**—Defendants National General Corporation (National), NGC Theatre Corporation (NGC) and Eugene V. Klein appeal from a judgment upon a jury verdict totaling $1,178,952.77 in a malicious prosecution action in favor of plaintiff John B. Bertero. The award consists of compensatory damages of $553,952.77 against the three defendants and punitive damages of $625,000 allocated as follows: $350,000 against National, $25,000 against NGC and $250,000 against Klein. We conclude that the evidence supports the jury findings on the issues of liability and damages except as to an award as part of compensatory damages for attorney fees in the sum of $25,000. The judgment is thus modified and, as modified, affirmed.

Bertero was elected president of National in 1958, culminating a lengthy association as an executive of both that company and of NGC's predecessor in interest, Fox West Coast Theatres Corporation (Fox), a controlled subsidiary. In 1959, following a power struggle within National, Bertero resigned his office but retained his seat on its board of directors. Coincident with the resignation Bertero entered into a 10-year employment contract with National. Under the terms of the agreement, which superseded an existing employment contract, he was to serve as a part-time executive for five years followed by five years of service as an advisor and consultant. The agreement was unanimously ratified by the board of directors (including Klein) and Fox guaranteed National's performance.

Klein, a major shareholder in National, became its president in early 1961. He and Bertero had previously disagreed over matters of company policy and their discord rapidly dissolved into animosity. Bertero resigned from his directorship in June of that year but rebuffed efforts to buy the remainder of the 1959 employment contract or to induce him to surrender stock options which he had obtained prior to 1959. On March 13, 1962, after Klein had secured control of National's board of directors, Bertero surrendered a portion of his stock options.

On March 29, Klein attempted to persuade Bertero to divest himself of his remaining stock options and to terminate the 1959 employment agreement. Bertero refused to acquiesce. Klein expressed his displeasure and in a letter dated that same day informed Bertero that the 1959 agreement was "invalid, unenforceable and an imposition upon the company." He simultaneously ordered Bertero's salary, life and health insurance benefits and stock options terminated.

In June of 1962 Bertero initiated an action against National and Fox seeking declaratory relief as to the 1959 agreement and the stock options purportedly terminated by Klein, as well as damages for unpaid salary from the date of repudiation. The corporate defendants, controlled by Klein, filed a motion to compel arbitration of the contractual disputes. This motion was ultimately resolved adversely to the defendants. (*Bertero* v. *Superior Court* (1963) 216 Cal.App.2d 213 [30 Cal.Rptr. 719].) An answer was then filed alleging that the 1959 agreement (1) was without consideration; (2) had been obtained through duress; and (3) had been secured through undue influence of Bertero on the board of directors. A month later the defendants filed an amended answer together with a cross-pleading seeking recovery of salary in the amount of $104,000 previously paid pursuant to the employment contract.

Bertero prevailed in the suit. The judgment declared the stock options and the 1959 employment agreement to be valid, and the cross-complaint was dismissed with prejudice. The judgment was affirmed on appeal. (*Bertero* v. *National General Corp.* (1967) 254 Cal.App.2d 126 [62 Cal.Rptr. 714].) Bertero received $607,069 in immediate satisfaction of the judgment and in excess of $50,000 in installments of salary thereafter becoming due.

Bertero thereupon instituted the instant action seeking damages for the malicious prosecution of the cross-complaint. At the pleading and pre-trial stages he proceeded on three separate theories within the rubric of malicious prosecution, but the case was eventually presented to the jury solely on the theory that the cross-complaint had been maliciously pros-

ecuted. As this was the only theory upon which liability was sought to be predicated at trial we need not consider the validity of other asserted grounds for recovery. (See *Gyerman* v. *United States Lines Co.* (1972) 7 Cal.3d 488, 499 [102 Cal.Rptr. 795, 498 P.2d 1043]; *Estate of Westerman* (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517]; *Ernst* v. *Searle* (1933) 218 Cal. 233, 240-241 [22 P.2d 715].)

■ To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 845 [92 Cal.Rptr. 179, 479 P.2d 379]; *White Lighting Co.* v. *Wolfson* (1968) 68 Cal.2d 336, 349 [66 Cal.Rptr. 697, 438 P.2d 345]; *Hurgren* v. *Union Mutual Life Ins. Co.* (1904) 141 Cal. 585, 587 [75 P. 168]); (2) was brought without probable cause (*Grant* v. *Moore* (1866) 29 Cal. 644, 648; *Masterson* v. *Pig'n Whistle Corp.* (1958) 161 Cal.App.2d 323, 335 [326 P.2d 918]; *Metzenbaum* v. *Metzenbaum* (1953) 121 Cal.App.2d 64, 68 [262 P.2d 596]); and (3) was initiated with malice (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 383 [295 P.2d 405]; *Baker* v. *Gawthorne* (1947) 82 Cal.App.2d 496, 498 [186 P.2d 981]). (See generally 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 255, pp. 2531-2532; Prosser, Law of Torts (4th ed. 1971) § 120, pp. 850-856; 1 Harper & James, The Law of Torts (1956) § 4.8.)

### Action for Malicious Prosecution
### Based on Cross-pleadings

**(2)** We initially consider whether an action for malicious prosecution lies when based on the prosecution of a cross-pleading which allegedly is maliciously filed. Defendants argue that (1) their cross-complaint did not initiate a judicial proceeding; (2) that it was in effect only an affirmative defense which they were obligated to assert under penalty of waiver (see Code Civ. Proc., § 439); and (3) that it did not interject any theories or burdens not already raised by the answer to the complaint.

The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by

slanderous allegations in the pleadings. In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action including reasonable attorney's fees (*Stevens* v. *Chisholm* (1919) 179 Cal. 557, 564 [178 P. 128]; *Eastin* v. *Bank of Stockton* (1884) 66 Cal. 123, 125-126 [4 P. 1106]), compensation for injury to his reputation or impairment of his social and business standing in the community (*Ray Wong* v. *Earle C. Anthony, Inc.* (1926) 199 Cal. 15, 18 [247 P. 894]; *Lerner* v. *Glickfeld* (1960) 187 Cal.App.2d 514, 526 [9 Cal.Rptr. 686]), and for mental or emotional distress (*Singleton* v. *Perry* (1955) 45 Cal.2d 489, 495 [289 P.2d 794]).[1]

The judicial process is adversely affected by a maliciously prosecuted cause not only by the clogging of already crowded dockets, but by the unscrupulous use of the courts by individuals ". . . as instruments with which to maliciously injure their fellow men." (*Teesdale* v. *Liebschwager et al.* (1919) 42 S.D. 323, 325 [174 N.W. 620].)

The harm to society and to the individual cross-defendant caused by the filing of a cross-pleading without probable cause and with malice is substantially similar to that occasioned by the filing of a complaint or other initial pleading known to be false or meritless. The malicious cross-plaintiff, like the malicious plaintiff, uses the judicial process as a vehicle for harassing or vexing his adversary or as a means of coercing the settlement of a collateral matter. The cross-defendant, like the defendant in an original cause maliciously prosecuted, is compelled to expend attorney's fees in defending against the false charge and may suffer the same mental or emotional distress and possible loss of reputation and standing in the community.

For our purposes no sound reason appears for treating a cause of action initiated by a cross-pleading as only an integral part of that cause initiated by the complaint. In *Skaff* v. *Small Claims Court* (1968) 68 Cal.2d 76 [65 Cal.Rptr. 65, 435 P.2d 825], we acknowledged that the filing of a counterclaim instituted a ". . . separate, simultaneous action" and reasoned that for purposes of the cross-action, the cross-defendant was a defendant, noting: "[i]n analyzing counterclaims and cross-complaints, this court has recognized that 'these cross-actions . . . are still distinct and independent causes of action, so that when properly interposed and stated

---

[1]Although the elements of an action for the malicious prosecution of a civil action are similar to those for an action following a criminal prosecution, they are not identical. (Prosser, *op. cit. supra,* at p. 853; 1 Harper & James, *op. cit. supra,* at pp. 328-329.) However, precedents such as *Wong* and *Singleton* are instructive on the measure of damages and the theory behind an award of damages.

the defendant becomes in respect to the matters pleaded by him, an actor, and there are two simultaneous actions pending between the same parties wherein each is at the same time both a plaintiff and a defendant.' *(Pacific Finance Corp.* v. *Superior Court* (1933) 219 Cal. 179, 182. . . .)" *(Id.,* at pp. 78-79; see also *Case* v. *Kadota Fig Assn.* (1950) 35 Cal.2d 596, 603 [220 P.2d 912].) In other instances case and statutory law recognize that a cross-pleading creates an action distinct and separate from an initial pleading.[2] Dismissal of the complaint, for instance, does not affect the independent existence of the cross-complaint or counterclaim. (Code Civ. Proc., § 581, subd. 5; *Tomales Bay etc. Corp.* v. *Superior Court* (1950) 35 Cal.2d 389, 395 [217 P.2d 968].)[3]

It is further of no significance that the contents of a cross-pleading may allege a transactional counterclaim as defendants contend in this case. Even if this were true Bertero was still compelled to defend against a possible $104,000 judgment and he was potentially subjected to liability for additional attorney fees as well as to the fears and traumas attendant to defendant status. The contention that defendants were compelled to assert their cause of action under threat of being deemed to have waived it is not responsive to the issue. A litigant is never compelled to file a malicious and fabricated action. It is not the assertion of a claim that is actionable but rather the malicious character of the assertion.

We likewise are not persuaded by defendants' claim that their cross-pleading was merely defensive and that a penalty should not be imposed for aggressively defending against the charges asserted in a complaint. Defendants invoke a line of cases headed by *Eastin* v. *Bank of Stockton, supra,* 66 Cal. 123, in which various courts have refused to recognize a tort of malicious defense. (See *Ritter* v. *Ritter* (1943) 381 Ill. 549 [46 N.E. 2d 41] and cases cited therein.) We do not propose to establish such a tort by our holding here. The *Eastin-Ritter* cases protect the right of a defendant, involuntarily haled into court, to conduct a vigorous defense.

---

[2]In 1971 the Legislature rewrote the provisions relating to cross-actions (Stats. 1971, ch. 244), dictating that a complaint meant a complaint or cross-complaint (Code Civ. Proc., § 426.10), thus eliminating the counterclaim by transforming those cross-actions which were formerly counterclaims into cross-complaints. (Code Civ. Proc., § 428.80.) As a result of the change, all cross-defendants must file an answer in order to controvert the material allegations of the cross-complaint. (Code Civ. Proc., § 431.20, subd. (a).) This statutory modification reinforces our treatment of all cross-actions as independent suits for purposes of establishing liability for malicious prosecution.

[3]In the only case to which we have been referred the Supreme Court of Colorado held that for purposes of initiating a maliciously prosecuted cause of action a cross-pleading could serve to fulfill the commencement requirement. (*Slee* v. *Simpson* (1932) 91 Colo. 461 [15 P.2d 1084, 85 A.L.R. 412].)

By seeking affirmative relief, however, defendants in the instant case did more than attempt to repel Bertero's attack; they took the offensive in attempting to prosecute a cause of action of their own. When such action is prompted by malice and is not based on probable cause, it is actionable as in the case of other affirmative, malicious prosecutions.

Defendants also remind us that malicious prosecution is not a tort "favored by the law" and urge that we not extend its application. (*Babb* v. *Superior Court, supra,* 3 Cal.3d at p. 847; *Sebastian* v. *Crowley* (1940) 38 Cal.App.2d 194, 202 [101 P.2d 120].) This convenient phrase should not be employed to defeat a legitimate cause of action. We responded to an argument similar to defendants' over 30 years ago, reasoning, ". . . we should not be led so astray by the notion of a 'disfavored' action as to defeat the established rights of the plaintiff by indirection; for example, by inventing new limitations on the substantive right, which are without support in principle or authority . . . ." (*Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 159 [114 P.2d 335, 135 A.L.R. 775].) Moreover, the "disfavored action" concept stems from public policy pertaining to the enforcement of the criminal laws. (*Ball* v. *Rawles* (1892) 93 Cal. 222, 228 [28 P. 937].) Public policy, however, does not limit the right to seek redress for the malicious abuse of the judicial process; such abuse cannot be sanctioned either in the assertion of affirmative claims in initiating proceedings or in the affirmative assertion of such claims after the initiation of proceedings.

We conclude accordingly that a cause of action for malicious prosecution lies when predicated on a claim for affirmative relief asserted in a cross-pleading even though intimately related to a cause asserted in the complaint.

### Probable Cause for Prosecution of Cross-action

NGC next contends that the judgment should be vacated because "clear and uncontradicted evidence" establishes that the cross-pleading was filed pursuant to the advice of counsel after the full disclosure of all relevant facts and that a person acting on the advice of counsel indicates that he has proceeded with probable cause and in good faith. Such factors, it is contended, are recognized as a defense to an action for malicious prosecution. (*Johnson* v. *Southern Pacific Co.* (1910) 157 Cal. 333, 338 [107 P. 611]; *Brinkley* v. *Appleby* (1969) 276 Cal.App.2d 244, 247 [80 Cal.Rptr. 734]; *Masterson* v. *Pig'n Whistle Corp., supra,* 161 Cal.App. 2d 323, 339.) However, if the initiator acts in bad faith or withholds from counsel facts he knew or should have known would defeat a cause of

action otherwise appearing from the information supplied, that defense fails. (*Dunlap* v. *New Zealand F. & M.I. Co.* (1895) 109 Cal. 365, 370-371 [42 P. 29]; *Northrup* v. *Baker* (1962) 202 Cal.App.2d 347, 355 [20 Cal.Rptr. 797]; *Hudson* v. *Zumwalt* (1944) 64 Cal.App.2d 866, 875 [149 P.2d 457].) Similarly, counsel's advice must be sought in good faith (*Dunlap, supra,* 109 Cal. at p. 370) and ". . . not as a mere cloak to protect one against a suit for malicious prosecution." (*Walker* v. *Jensen* (1949) 95 Cal.App.2d 269, 274 [212 P.2d 569].) The burden of proving this affirmative defense is, of course, on the party seeking to benefit by it. (*Jackson* v. *Beckham* (1963) 217 Cal.App.2d 264, 272 [31 Cal.Rptr. 739]; *Diggs* v. *Arnold Bros., Inc.* (1933) 132 Cal.App. 518, 523 [23 P.2d 71].)

The record does not establish that as a matter of law defendants must prevail on this defense. There was substantial evidence that Klein acted in bad faith toward Bertero beginning shortly after the former assumed the presidency of National and continuing through the trial on the instant matter. For example, after Bertero's refusal to negotiate the sale of the remainder of his contract and to relinquish his stock options at the March 13, 1962, meeting, Klein told him that he was going to go "all the way" in disposing of the matter, and the letter firing Bertero purporting to terminate his stock options and insurance benefits was written after their next meeting. The communication was sent despite Klein's knowledge that the contract had been ratified by a unanimous board of directors including Klein himself (negating the unfair advantage allegation); that Bertero had performed substantial services for National and had covenanted not to compete with the corporation (negating the lack of consideration allegation); and that under the by-laws of National Bertero could have been dismissed without cause at any time by a majority vote of the board of directors (negating the duress allegation). There was also evidence that counsel for defendants in the prior action harbored deep feelings against Bertero permitting the inference that he, too, failed to act in good faith. In a letter to Klein while the appeal in the prior action was pending, the attorney admitted arguing a weak point in his brief ". . . not because of any high hopes of now winning it, but because I wanted to show the Appellate Court what a bastard Bertero was." Counsel who now represent defendants on appeal did not represent any of defendants either at trial or on appeal in the prior case.

It also appears that defendants failed to establish that they informed counsel of specific relevant facts prior to the filing of the cross-action. (See *Centers* v. *Dollar Markets* (1950) 99 Cal.App.2d 534, 545 [222 P.2d 136]; *Singleton* v. *Singleton* (1945) 68 Cal.App.2d 681, 695 [157 P.2d

886].) Although Klein and counsel testified that all defendants' books and records had been made available, this testimony fails to meet the burden that counsel must be provided with specific facts and not merely unleashed on a hunting expedition. (*Baker* v. *Gawthorne, supra*, 82 Cal.App.2d at p. 500; *Schubkegel* v. *Gordino* (1943) 56 Cal.App.2d 667, 672 [133 P.2d 475]; *Gordon* v. *Mount* (1932) 125 Cal.App. 701, 706-707 [13 P.2d 932].) The defense based on defendants' allegations that they acted in good faith and fully and fairly advised their counsel prior to initiating the cross-pleading thus fails.

### Propriety of Jury Instructions
### on Issue of Liability

■ National and Klein next object to certain jury instructions. They first complain of an instruction that ". . . [i]f a person initiating a judicial proceeding does not have an actual and honest belief in the validity of the claim asserted by him then he does not have a [*sic*] probable cause to initiate such proceedings." This is a correct statement of the law. Lack of probable cause may be established by proof that the action was commenced despite the initiator's knowledge of the falsity of the claim. (*Albertson* v. *Raboff, supra*, 46 Cal.2d 375, 382.) The existence of probable cause is, in part, determined by an objective test—it is " 'a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true.' " (*Lee* v. *Levison* (1916) 173 Cal. 166, 169 [159 P. 438]; see also *Kassan* v. *Bledsoe* (1967) 252 Cal.App.2d 810, 816 [60 Cal.Rptr. 799].) But if the initiator knows that his claim is groundless he cannot have an actual or honest belief in its validity, and he may not escape liability for commencing an action based on such a claim merely because a reasonable man might have believed it was meritorious.

■ Defendants also challenge an instruction which sanctioned a finding of liability even if Bertero could prove that just one of three theories of liability embodied in defendants' cross-pleading was brought without probable cause.[4]

In *Singleton* v. *Perry, supra*, 45 Cal.2d 489, the defendant had sworn to criminal complaints against the plaintiff who had thereupon been ar-

---

[4]The instruction provides: "In the prior action the defendants sought to have the 1959 agreement declared invalid by three separate contentions: that the plaintiff obtained it by duress, that the plaintiff obtained it by undue influence, and that the plaintiff gave no consideration to National and Fox West Coast. In this connection you are instructed that a defendant in a malicious prosecution action cannot escape liability for the malicious prosecution of a claim for which he did not have probable cause by joining it with a claim for which he did have probable cause to assert."

rested in Cleveland, Ohio, and returned to California. After all charges had been dismissed following a preliminary hearing, plaintiff instituted two civil actions against defendant alleging, inter alia, malicious prosecution. Plaintiff was successful in but one suit and defendant appealed from that judgment. Recognizing that the adverse judgment from which no appeal had been taken was final against plaintiff, we did not question that liability for malicious prosecution could stem from the groundless criminal charge filed together with a complaint for which there was probable cause. Rather, the issue we faced was the task of assigning the burden of proving the proper allocation of damages between the harm caused by the legitimate and the groundless criminal complaints.

Confronted with a similar question, the Supreme Court of Missouri reasoned, ". . . it would seem almost a mockery to hold that, by uniting groundless accusations with those for which probable cause might exist, the defendants could thereby escape liability, because of the injured party's inability to divide his damages between the two with delicate nicety." (*Boogher* v. *Bryant* (1885) 86 Mo. 42, 50; cf., *Gowin* v. *Heider* (1964) 237 Ore. 266, 281 [386 P.2d 1, 391 P.2d 630].) We adopted the foregoing reasoning in *Singleton* and held that the plaintiff did not have "the further burden of showing that her damage was specifically attributable to the malicious prosecution as opposed to the prosecution which the jury found was not malicious." (*Singleton* v. *Perry, supra,* 45 Cal.2d 489, 498.)

NGC attempts to distinguish *Singleton* on grounds that in criminal prosecutions each charge may independently subject the accused to incarceration while in this case only one remedy—the recovery of monies already paid Bertero under the contract—was sought with three *theories* for the recovery suggested. NGC reasons that applying the *Singleton* rationale to civil cases in which the plaintiff in the former action asserted separate theories of recovery will result in potential plaintiffs being unable to rely on multiple theories of liability stemming from a single occurrence.

In *Albertson* v. *Raboff, supra,* 46 Cal.2d 375, the defendant had previously filed an action against the plaintiff seeking to recover on a promissory note and asserted therein a claim to plaintiff's real property on a theory of fraudulent conveyance. The defendant was successful in the prior action only as to the claim based on the note. Plaintiff then brought a suit charging slander of title and malicious prosecution. We held that a malicious prosecution action would lie on the claim of fraudulent conveyance despite the existence of probable cause for the remaining claims, citing *Singleton*. (Cf. *Lerner* v. *Glickfeld, supra,* 187 Cal.App.2d 514, 524-525.)

In arguing against the application of *Raboff* and *Singleton* in the instant circumstances, NGC urges "[t]he test should be whether [defendants] had reasonable grounds to seek the relief they sought in their Cross-Complaints, not whether they had such grounds for asserting each of the three theories contained in the Cross-Complaint." We disagree. A plaintiff acting in good faith may safely sue on alternative theories after full disclosure to counsel when he possesses a reasonable belief in the validity of *each* of those theories. If his original pleading (or cross-pleading) advances a theory which subsequent research or discovery proves to be untenable the pleading may be amended. We see no reason for permitting plaintiffs and cross-complainants to pursue shotgun tactics by proceeding on counts and theories which they know or should know to be groundless.[5]

■ Defendants finally attack the instructions as a whole, alleging that the charge "constituted a hortatory espousal of plaintiff's contentions" and contending that several alleged incomplete formula instructions were "purely and simply virulent" and "coercive." The thrust of the assault is that the repetition of several key phrases and theories during the course of the charge was prejudicial, the theory being that the judge unduly influenced the jury in Bertero's favor. No material substantive errors bearing on liability other than those already discussed are raised.

Initially, we note the jury was charged that (1) no undue emphasis was intended by repetition of any rule, direction or idea; (2) instructions on the measure of damages should not be interpreted to mean that liability must be found; and (3) the judge did not intend to intimate how any issue should be decided and if any juror believed such intimation was present such should be disregarded. Of course such admonitions will not salvage an inherently one-sided charge although the giving of such instructions should be considered in weighing the net effect of the charge. (*Lewis* v. *Doyle* (1957) 149 Cal.App.2d 176, 183 [307 P.2d 965].)

Focusing on the specifics of defendants' allegations relating to the charge as a whole, we find that the first questions the repetition of key words and theories relating to probable cause and malice. ■ Mere repetition of

[5]Our conclusion that an action for malicious prosecution lies when but one of alternate theories of recovery is maliciously asserted disposes of a further contention of National and Klein. They argue a statutory presumption of a lack of consideration and undue influence (Civ. Code, § 2235, as it existed in 1959) in the creation of the employment contract in favor of Bertero. Their theories of recovery in their cross-pleading, however, encompassed duress as well. Whatever the merits of the claimed presumptions, and we do not reach that issue, the cause of action for malicious prosecution could be predicated on maliciously asserted charges that Bertero exercised duress in obtaining the employment contract.

key words or emphasis on certain issues does not per se constitute prejudicial error (*Taha* v. *Finegold* (1947) 81 Cal.App.2d 536, 544 [184 P.2d 533] and cases cited therein), but such repetition is a factor to be considered in determining whether the charge is prejudicial. ██ Here, a lengthy·and somewhat repetitive charge was unavoidable. The trial was long and bitterly contested and the issues, particularly malice and probable cause, were confusing. The jury was instructed on malice in relation to such issues as (1) the necessity of proving it as an element of the tort of malicious prosecution, (2) the allocation of the burden of proving it, (3) the various definitions of it, and (4) the manner in which it may be proven (i.e., through inference from lack of probable cause). It would have been error had the judge failed to explain the intricacies of that body of law.

██ Several instructions are challenged as incomplete "formula" instructions. Formula instructions may unduly emphasize one party's case and incomplete formula instructions often mislead the jury. Reviewing courts have long frowned on their use (see *Taha* v. *Finegold, supra,* 81 Cal.App. 2d 536, 543) although, again, the mere giving of such instructions does not mandate a reversal. In analyzing whether the giving of an alleged formula instruction constitutes prejudicial error, the proper test is whether the instruction purports to state all the elements involved in the case and whether the omitted elements are covered by specific instructions elsewhere. (*Sandoval* v. *Southern Cal. Enterprises, Inc.* (1950) 98 Cal.App.2d 240, 253 [219 P.2d 928]; *Amidon* v. *Hebert* (1949) 93 Cal.App.2d 225, 227 [208 P.2d 733]; cf. *Spear* v. *Leuenberger* (1941) 44 Cal.App.2d 236, 249 [112 P.2d 43].) One instruction so challenged here failed to mention the affirmative defense of reliance on the advice of counsel. The defendants cannot seriously argue that the jury was unaware of that defense ʔr confused about its elements since it was fully explained in other unchallenged instructions. Nor could the challenged instruction have diverted the jury from that defense.

One lengthy instruction discussed the three theories incorporated in defendants' affirmative defense in the prior action. Defendants contend it introduced irrelevant and prejudicial matters to the jury. They argue that the cross-action was merely a common count not necessarily based on the duress, lack of consideration or undue influence theories. For reasons heretofore considered in our discussion of multiple theories of recovery it is manifest that the argument ignores reality and is groundless.

██ The defense did not propose a complete set of instructions to

convey its theory of the case to the jury.[6] Although all instructions are deemed excepted to (Code Civ. Proc., § 647), it remains the duty of a party to propose complete and comprehensive instructions in accordance with his theory of the litigation. (*Switzer* v. *State of California* (1969) 269 Cal.App.2d 627, 635 [75 Cal.Rptr. 371].) Defendants' failure *to present evidence* and *to propose instructions* consistent with their theory of the case necessarily resulted in a charge favorable to Bertero. However, in the absence of substantively incorrect instructions, our inquiry is limited to whether that charge was prejudicial to defendants. Whether a jury has been misled by an erroneous instruction or by the overall charge must be determined by an examination of all the circumstances of the case including a review of all of the evidence as well as the instructions as a whole. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Bridgman* v. *Safeway Stores, Inc.* (1960) 53 Cal.2d 443, 450 [2 Cal.Rptr. 146, 348 P.2d 696]; *Butigan* v. *Yellow Cab Co.* (1958) 49 Cal.2d 652, 660-661 [320 P.2d 500]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 407 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) Upon such a review we cannot say that the jury was misled or that it is reasonably probable that a different verdict on liability would be returned absent the alleged bias in the charge. Defendants' contention that the instructions were inadequate must, accordingly, be rejected insofar as they relate to defendants' liability for malicious prosecution.

### Measure of Damages—Items
### Recoverable as Compensatory Damages

Defendants challenge the various measures of damages awarded Bertero. As previously stated, the measure of compensatory damages for the malicious prosecution of a civil action includes attorney fees and court costs for defending the prior action and compensation for emotional distress, mental suffering and impairment to reputation proximately caused by the initiation and prosecution of the action. Except as hereinafter specifically noted, the jury was properly instructed on the measure of compensatory damages.[7]

---

[6]National and Klein proposed 19 instructions of which the court gave 14; NGC offered two additional instructions, one of which was given. Twelve of the fifteen given are denominated by NGC as "general introductory and conclusionary instructions." Thirty-two special instructions on liability and damages proposed by Bertero were given.

[7]Instruction 49 provides: "The amount of such an award shall include . . . such sum as will reasonably compensate the plaintiff for his expenses including attorneys'

In recognizing that the malicious prosecution of a cross-action filed without probable cause is actionable, we adopt the conventional measure of damages in malicious prosecution actions although the instant case cannot be considered as conventional. The cross-action maliciously pursued, was premised upon the same theories as was a privileged affirmative defense, and common factual and legal matters were asserted and urged in support of each pleading. (See *Eastin* v. *Bank of Stockton, supra,* 66 Cal. 123; *Ritter* v. *Ritter, supra,* 381 Ill. 549.) It was thus difficult if not impossible to apportion the harm which flowed from proceedings had on the cross-action from that which flowed from those had on the affirmative defense.

As in the case of the assertion of a maliciously prosecuted complaint with one for which there was probable cause (see *Singleton* v. *Perry, supra,* 45 Cal.2d 489, 498), the burden of proving such an apportionment must rest with the party whose malicious conduct created the problem. To place the burden on the injured party rather than upon the wrongdoer would, in effect, clothe the transgressor with immunity when, because of the interrelationship of the defense and cross-action, the injured party could not apportion his damages. In situations in which a plaintiff has proven damages proximately caused by the negligence of several defendants, we have placed upon the defendants the burden of absolving themselves from culpability (*Summers* v. *Tice* (1948) 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91]), and have also required that a defendant prove what portion of the totality of damages his negligence has caused when the evidence establishes that he has contributed substantially to the total damages (*Finnegan* v. *Royal Realty Co.* (1950) 35 Cal.2d 409 [218 P.2d 17]; see also, *City of Oakland* v. *Pacific Gas & E. Co.* (1941) 47 Cal.App.2d 444 [118 P.2d 328]). Similarly in the instant case the defendants must shoulder the burden of apportioning proven damages if, in fact, some of such damages is the result of an aggressive defense which could be asserted with immunity and some is the result of a cross-action maliciously prosecuted.[8]

---

fees paid by him in successfully defending against the claim asserted by National and Fox West Coast in their cross-complaint in the prior action.

"Such sum as will reasonably compensate plaintiff for any detriment or harm to his reputation, including any impairment of his social and business standing.

"Such sum as will reasonably compensate the plaintiff for any mental suffering or emotional distress suffered by him. Mental suffering and emotional distress include humiliation, indignity, worry, nervousness and anxiety."

[8]Defendants contend that to so hold inhibits the ability of a party involuntarily haled into court as a defendant to present a vigorous defense. On the contrary, our holding does not strip a defendant of his right to his day in court. It is simply a recognition that as between two conflicting interests—a defendant's election to risk injury to a plaintiff by an aggressive defense and a plaintiff's right to be free from groundless and maliciously prosecuted cross-actions—plaintiff's interest is paramount. By electing to prosecute a malicious cross-action in conjunction with an aggressive defense which

Bertero recovered from defendants in the initial action all damages resulting from the breaches of the 1959 employment contract and agreement relating to the stock options, and it is manifest that he cannot again recover for identical breaches in the instant action for malicious prosecution. We must conclude, however, that as the jury was properly instructed on the measure of damages the damages awarded were based on findings that Bertero had suffered injuries attributable only to proper elements of damages recoverable in an action for malicious prosecution. Testimony tending to prove that Klein acted without probable cause in prosecuting the cross-complaint was thus relevant although such testimony may also have related to other improper conduct for which Bertero had previously recovered damages. Defendants correctly argue that since Bertero had already been compensated for the breach of contract, the jury could not heap additional rewards upon him for the same injury. They further contend that the receipt of collateral testimony of the breaches of contract so prejudiced the jury against defendants that the final award of compensatory damages necessarily included, as a matter of law, elements properly attributable to the action for breach of contract.

Defendants' contention is without merit. ■■■ A reviewing court must uphold an award of damages whenever possible (*Seffert* v. *Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 508 [15 Cal.Rptr. 161, 364 P.2d 337]) and all presumptions are in favor of the judgment (*Torres* v. *City of Los Angeles* (1962) 58 Cal.2d 35, 43 [22 Cal.Rptr. 866, 372 P.2d 906]; *Leming* v. *Oilfields Trucking Co.* (1955) 44 Cal.2d 343, 356 [282 P.2d 23, 51 A.L.R.2d 107].) Evidence that Bertero accumulated and paid substantial legal fees as a result of defending against the cross-complaint maliciously prosecuted is undisputed. The filing of the cross-action resulted in substantial damage to Bertero's reputation in the business and particularly in the entertainment industry. Despite the fact that the improper firing and its attendant publicity predated the actionable pleadings, allegations in the present action which were tantamount to charges of fraud could reasonably have been interpreted by the jury to have further damaged Bertero's reputation. Finally, there is substantial testimony as to the trauma suffered by Bertero due to the filing of the cross-pleading which sought $104,000, the successful recovery of which might have made him insolvent. At the time of the filings Bertero was unemployed, his stock

may itself cause injury to a plaintiff, the defendant must bear the burden of establishing the apportionment of the overall damages proved by the plaintiff. Here, defendants did not attempt to differentiate between those damages caused plaintiff by the filing and assertion of their answer and the filing and prosecution of the cross-complaint. Bertero established that damages had flowed from the filings and proceedings thereon and thus no apportionment need be made.

options had been unilaterally revoked along with his insurance benefits and his reputation in the entertainment industry had been challenged. The jurors could reasonably have inferred that the prosecution of the fabricated charges exposed Bertero to damages to which he could not have responded and thereby served to bring about substantial emotional distress.

As the jurors were properly instructed on the elements of compensatory damages and could reasonably have made findings in support of the award therefor, we must reject the contention that such award contained improper elements of recovery except as to the award for attorney fees next considered.

### Measure of Damages—Propriety of Instruction re Allocation of Attorney Fees

Instruction 59,[9] dealing with the recoverability of attorney fees incurred in the prior action, was a misstatement of the law and the facts. When an action maliciously prosecuted is a cross-action, there are two levels of allocation of attorney fees possible. In the first, the legal costs plaintiff incurred in presenting his affirmative case may be differentiated from those incurred in meeting the thrust of any affirmative defenses and the cross-action. The second allocation differentiates between the cost of meeting the affirmative defenses and the cost incurred in litigating the cross-action.

The instruction fails to recognize that first there was an apportionment to be made prior to the allocation of the remaining portion of attorney fees and court costs to which the instruction addresses itself. As read to the jury, instruction 59 thus permits the recovery of *all* attorney fees Bertero had incurred in the absence of "undeniable evidence" that a legitimate allocation could be made. It appears of record that Bertero had contracted to pay his counsel 10 percent of the amount recovered as lost salary prior to the filing of any answer or cross-pleading and, based on the award for unpaid salary in that action, his attorney was entitled to a fee of $25,000 for prosecuting the action. This portion of the overall attorney fees was not allocable to defending against the prosecution of the malicious cross-action and Bertero was not entitled to recover any portion of it.

---

[9]Instruction 59 provides: "The evidence is undisputed that plaintiff expended $162,126.00 in payment of his attorneys' fees and $3,496.30 for unreimbursed expenses in the prior action. The plaintiff is not required to prove what part of said payments were incurred in defending against the claims of the defendants in that action which were asserted in the cross-complaint and the answer to the complaint. Any precise allocation of said fees and expenses would be extremely difficult and need be made only if the defendants produced undeniable evidence of the allocability of such expenses."

The instruction also purports to provide for allocation between the cost of meeting the thrust of the answer and the cost of defending against the cross-action maliciously prosecuted. Such allocation may have been difficult for the defendants to establish. Nevertheless, as with the allocation of other compensatory damages caused by the dual services performed by counsel in responding to the pleadings filed by defendants, this burden, as the instruction provides, must fall to the defendants. To impose such a burden on the plaintiff would foreclose recovery for a harm admittedly done. (See *Singleton* v. *Perry, supra,* 45 Cal.2d 489, 498.)

Defendants correctly challenge instruction 59 on the further ground that it required proof of allocation by an unlawfully high standard of proof. No reason appears why the degree of proof by which plaintiff must establish an allocation of litigation expenses between meeting the thrust of the answer and defending the cross-action should be greater than that generally required in civil actions, that is, by a preponderance of the evidence. In *Hogan* v. *Midland National Ins. Co.* (1970) 3 Cal.3d 553, 564 [91 Cal.Rptr. 153, 476 P.2d 825], we held that an insurer was required to establish by "undeniable evidence" the apportionment of litigation expenses incurred by an insured between those attributable to the defense against specific claims for which the insurer was held not to be liable under the policy and those for which it was liable to the insured and had failed to provide a defense. We recognized in that case, however, that an insurer is "under a duty to defend a claim whenever the allegations of a complaint would support a recovery upon a risk covered by the policy" (*id.,* at p. 563), and that the allegations of the complaint, although not proof of all facts asserted, brought the action within the policy's coverage. We stated that "the insurer having breached its contract to defend should be charged with a heavy burden of proof" of allocability. (*Id.,* at p. 564.) *Hogan* is thus inapposite. The insurer had a preexisting duty at least to initiate a defense, and, because of its breach it was required to assume the heavier burden of establishing a proper allocation between litigation expenses incurred by the insured in defending against claims which were covered by the policy and those which were not. Defendants in the instant circumstances had no preexisting responsibility for Bertero's attorney fees.

The jury is presumed to have followed the challenged instruction and, accordingly, to have awarded Bertero $25,000 in excess of what he was entitled to as attorney fees in the award for compensatory damages. No purpose would be served by remanding the cause for an allocation which the record establishes as a matter of law must be made. We accordingly

modify the judgment by deleting $25,000 from Bertero's recovery of compensatory damages.[10]

### Measure of Damages—Excessiveness of Award for Compensatory Damages

Defendants further contend that even assuming the existence of substantial evidence of compensatory damages as to each element thereof, the amount awarded is excessive. We have recognized that while the jury is entrusted with vast discretion in determining the amount of damages to be awarded, " '. . . where the recovery is so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice, the duty is then imposed upon the reviewing court to act.' " (*Cunningham* v. *Simpson* (1969) 1 Cal.3d 301, 308, 309 [81 Cal.Rptr. 855, 461 P.2d 39], quoting from *Rosenberg* v. *J. C. Penney Co.* (1939) 30 Cal.App.2d 609, 628 [86 P.2d 696]; see also *Roedder* v. *Lindsley* (1946) 28 Cal.2d 820, 823 [172 P.2d 353].)

Initially, we note that a claim of excessive damages was raised in connection with a motion for a new trial and was denied, despite the fact that the trial court was not bound by the "passion and prejudice" language of former Code of Civil Procedure section 657, subdivision 5. (Amended Stats. 1967, ch. 72, § 1.)  And although the trial court's determination is not binding upon a reviewing court, it is to be accorded great weight because having been present at the trial the trial judge was necessarily more familiar with the evidence. (*Hickey* v. *Coschina* (1901) 133 Cal. 81, 83 [65 P. 313]; see also, 4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 930, pp. 3212-3214.)

Scrutinizing the judgment in light of the above, we cannot say that the compensatory damages awarded reflect, as a matter of law, that the jury acted from passion or prejudice. It is noteworthy that, excluding attorneys' fees, the harm suffered by Bertero was solely to intangible interests—his reputation and emotional well-being. The fixing of such damages has long been vested in the sound discretion of the trier of fact (*Weaver* v. *Page* (1856) 6 Cal. 681, 685) subject only to the passion and prejudice standard (*Scott* v. *Times-Mirror Co.* (1919) 181 Cal. 345, 366-367 [184 P. 672, 12 A.L.R. 1007]). In view of the testimony elicited by Bertero on the issue of damages and considering the defendants' complete failure to

---

[10]Defendants have made no attempt to offer proof on the apportionment of attorney fees. The record is devoid of proof relating to the allocability of the $3,496.30 in unreimbursed court costs and defendants, having failed to meet their burden as to the allocability of such costs, cannot complain that the award of compensatory damages includes this full amount.

attempt in any way to rebut such testimony,[11] we conclude that, except as to the award for attorneys' fees as noted, the compensatory damage award is not excessive.[12]

### Measure of Damages—Award of Exemplary Damages

We are also of the view that exemplary damages totalling $625,000 have been properly awarded. When the defendant is found to be guilty of express or implied malice, the jury may award damages against a defendant "for the sake of example and by way of punishing" him. (Civ. Code, § 3294.) It follows that the wealthier the wrongdoing defendant, the larger the award of exemplary damages need be in order to accomplish the statutory objective. (*Coy* v. *Superior Court* (1962) 58 Cal.2d 210, 222-223 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678]; *Marriott* v. *Williams* (1908) 152 Cal. 705, 710 [93 P. 875]; *Wetherbee* v. *United Ins. Co. of America* (1971) 18 Cal.App.3d 266, 270-271 [95 Cal.Rptr. 678]; *MacDonald* v. *Joslyn* (1969) 275 Cal.App.2d 282, 293-294 [79 Cal.Rptr. 707, 35 A.L.R.3d 641].) Viewing the facts in a light most favorable to the judgment, we find that defendants' conduct consisted of filing fabricated claims in order to coerce Bertero to settle or abandon a legitimate claim. This flagrant abuse of the judicial process is precisely the type of tortious conduct that an award of exemplary damages is designed to deter. The vast wealths of the defendants warrant a large award. For reasons set forth in our consideration of compensatory damages, the award of exemplary damages is likewise not excessive.

NGC argues that the element of malice which must be proved to estab-

---

[11]The defendants put on no testimony although they might have attempted to prove that Bertero did not have as good a reputation in the business community as his testimony tended to show. (*Snively* v. *Record Publishing Co.* (1921) 185 Cal. 565, 581 [198 P. 1]; *Hearne* v. *De Young* (1901) 132 Cal. 357, 362 [64 P. 576].)

[12]Defendants have compiled a lengthy list of judgments awarding damages which have been reversed on appeal as excessive. Those cases do not, in and of themselves, mandate a reversal here. The vast variety of and disparity between awards in other cases demonstrate that injuries can seldom be measured on the same scale. The measure of damages suffered is a factual question and as such is a subject particularly within the province of the trier of fact. For a reviewing court to upset a jury's factual determination on the basis of what other juries awarded to other plaintiffs for other injuries in other cases based upon different evidence would constitute a serious invasion into the realm of factfinding. (*Seffert* v. *Los Angeles Transit Lines, supra,* 56 Cal.2d 498, 508; *Leming* v. *Oilfields Trucking Co., supra,* 44 Cal.2d 343, 355-356.) Thus, we adhere to the previously announced and historically honored standard of reversing as excessive only those judgments which the entire record, when viewed most favorably to the judgment, indicates were rendered as the result of passion and prejudice on the part of the jurors. We cannot conclude that the award of damages could be so characterized in the instant case.

lish a prima facie case of malicious prosecution is not necessarily sufficient to justify exemplary damages. It contends that while plaintiff's case may be proved by malice inferred from a want of probable cause, "[a] state of mind which has sometimes been referred to as animus malus is required before punitive damages may be awarded." Defendants' statement of the rule is correct but the jury was instructed on the proper proof of malice in awarding of exemplary damages.

Civil Code section 3294 sanctions the recovery of exemplary damages in non-contract cases ". . . where the defendant has been guilty of . . . malice, express or implied." This has long been interpreted to mean that malice in fact, as opposed to malice implied by law, is required. (*Wolfsen* v. *Hathaway* (1948) 32 Cal.2d 632, 647 [198 P.2d 1]; *Davis* v. *Hearst* (1911) 160 Cal. 143, 162 [116 P. 530]; *Gombos* v. *Ashe* (1958) 158 Cal. App.2d 517, 527 [322 P.2d 933].) The malice in fact, referred to by NGC as animus malus, may be proved under section 3294 either expressly (by direct evidence probative on the existence of hatred or ill will) or by implication (by indirect evidence from which the jury may draw inferences). (*Davis* v. *Hearst, supra,* 160 Cal. 143, 162.)

NGC fails to distinguish between concepts of malice proved indirectly through inference and malice implied by law. The latter admittedly may not serve to support an award of punitive damages. However, malice in fact may be proved by inference from the want of probable cause. (*Burke* v. *Watts* (1922) 188 Cal. 118, 126 [204 P. 578]; *Jensen* v. *Leonard* (1947) 82 Cal.App.2d 340, 351 [186 P.2d 206].) The jury in the instant case was so charged and evidence of want of probable cause was sufficient proof of malice to justify an award of punitive damages. The jury was also properly instructed that in order to establish malice for both liability and punitive damages personal hostility or ill will need not be shown; that the absence of an honest and sincere belief in the validity of the cross-action was sufficient.[13] (*Albertson* v. *Raboff, supra,* 46 Cal.2d 375, 383.)

---

[13]Citing several cases from the criminal law, National and Klein also argue that Civil Code section 3294, enacted in 1872, is unconstitutionally vague because it fails to provide sufficient guidance for the trial courts charged with implementing it. They ignore the common law of punitive damages which section 3294 merely codifies. This body of law specifically defines when exemplary damages may be awarded and how the amount shall be determined. (*Cunningham* v. *Simpson, supra,* 1 Cal.3d 301; Annot. (1954) 35 A.L.R.2d 308. National and Klein acknowledge this very point earlier in their brief by their insistence on modifying the damages judgment on the authority of established common law principles. We note in passing that on several occasions section 3294 has been held constitutional. (*Wetherbee* v. *United Ins. Co. of America, supra,* 18 Cal.App.3d 266, 272; *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376, 404-405; *Toole* v. *Richardson-Merrell Inc.* (1967) 251 Cal.App. 2d 689, 716-717 [60 Cal.Rptr. 398, 29 A.L.R.3d 988].)

NGC finally urges that since a corporation may be liable for punitive damages only for malicious acts done by its agents and with the knowledge or under the direction of its corporate officials having the power to bind the corporation (see *Lowe* v. *Yolo County etc. Water Co.* (1910) 157 Cal. 503, 510-511 [108 P. 208]; Rest., Torts, § 909), it is not subject to such damages for the actions of Klein. Although Klein was an employee of National and not of Fox (NGC's predecessor), he controlled the litigation comprising the prior action in behalf of both corporate defendants. This included the filing of the cross-pleading in behalf of National and Fox. NGC's failure to challenge Klein's authority to act in its behalf is unquestionably a ratification of his actions. (Rest., Torts, § 909, subd. (d).)

The judgment is modified by striking from the award of compensatory damages the sum of $25,000 and as so modified is affirmed. Respondent shall recover costs on appeal.

McComb, J., Tobriner, J., Sullivan, J., Clark, J., Burke, J.,* and Files, J.,† concurred.

Appellants' petitions for a rehearing were denied January 29, 1975, and the opinion was modified to read as printed above. Mosk, J., did not participate therein.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Assigned by the Chairman of the Judicial Council.