Filed 10/4/13  Miller v. Merchasin CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **ROY MILLER et al.,** | |
| **Plaintiffs and Respondents,** | **A136330** |
| **v.** | |
| **MARCUS DANIEL MERCHASIN et al.,** | **(San Francisco City & County Super. Ct. No. CGC-12-18354)** |
| **Defendants and Appellants.** | |

Marcus Daniel Merchasin, William Hedden, and Consolidated Adjusting, Inc. (appellants), appeal from an order denying their anti-SLAPP[1] motion as to a malicious prosecution claim brought by Roy Miller, Mario Galande, and Miller-Galande Antiques, a sole proprietorship (respondents).  We affirm.

## BACKGROUND

### Factual Background

Prior to the events giving rise to this action, Miller and Galande lived and operated their business, Miller-Galande Antiques, in a property they owned in San Francisco (the property).  On December 31, 1996, there was a fire on the property.  On January 2, 1997, Miller and Galande retained Consolidated Adjusting, Inc. (Consolidated), to negotiate on their behalf with their insurance company regarding their claim for fire-related losses.

---

[1]  SLAPP stands for strategic lawsuits against public participation.  (*Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1.)

The retainer agreement provided that Consolidated would receive 10 percent of the insurance company's payment on the claim.

The claim had not settled by April, and Consolidated advanced Miller and Galande $7,000.[2] More months passed without settlement. Miller believed that Consolidated was holding out for a settlement that was substantially higher than the amount of actual damage to the property. In November, frustrated by the delays, Miller and Galande terminated Consolidated and hired an attorney who, in April 1998, settled their insurance claim for $163,230. The settlement agreement with the insurance company provided that 10 percent of the claim would be held in a trustee account "pending resolution of a dispute between" Miller and Galande and Consolidated.

*The Underlying Lawsuit*

In April 1999, Consolidated filed a lawsuit against respondents (the underlying lawsuit).[3] The underlying lawsuit alleged causes of action for breach of contract, interpleader, accounting, common counts, quantum meruit, account stated, and open book account. The complaint alleged damages in connection with the retainer agreement of $25,000 "or in such other sums according to proof," and an additional $7,000 from the unpaid loan.

The complaint prayed for relief "[f]or the sum of $25,000.00 or for such amount[s] as are according to proof at the time of trial." The prayer for relief also sought, "[i]n the alternative, . . . judgment in the sum of [$1 million] in addition to and/or in lieu of any other damages sought herein." There were no allegations in the complaint that justified damages of $1 million.

In May 1999, Consolidated attempted to personally serve respondents at one of the units on the property that had been damaged in the fire. Neither Miller nor Galande lived there at the time, and Miller-Galande Antiques was not in operation at that address.

---

[2] Respondents state that this conduct violated Insurance Code section 15028, subdivision (c), but they do not contend that such a violation absolved Miller and Galande of their obligation to repay the loan.

[3] Consolidated also sued the insurance company, but apparently later discharged it.

There is evidence that, prior to the attempted service, Miller informed Consolidated that he and Galande were residing at a different address and provided it with that address as well as two telephone numbers at which they could be reached. There is also evidence that, prior to the attempted service, Consolidated received a letter from Miller and Galande listing as their address the address used for attempted service. In June, after three failed attempts to personally serve respondents, Consolidated effected substituted service by serving an individual at the property identified on the Proof of Service as "Robert Danang, Receptionist." Miller subsequently stated that he did not know anyone by that name and Miller-Galande Antiques had no employees. Miller and Galande did not receive notice of the summons and complaint at that time.

Shortly after this substituted service, Consolidated propounded several discovery requests, mailing them to the same address used for service. The discovery included requests for admission to each respondent; the first request sought an admission "that you owe Consolidated Adjusting, Inc. [$1 million]." The requests sought the additional admission "that [Consolidated] is entitled to judgment in this matter in the sum of [$1 million]." Miller and Galande did not receive any of the discovery requests.

In December 1999, after respondents had neither filed an answer, responded to discovery, or otherwise appeared in the action, Consolidated sought, and obtained, a court order deeming admitted the unresponded requests for admission. Promptly thereafter, Consolidated requested and received an entry of default. Consolidated mailed service copies of both of these requests to the same address used for service of the summons and complaint.

Consolidated then requested a default judgment for $1 million. There is no indication in the record that Consolidated presented to the court, or itself possessed, any evidence that it was entitled to $1 million in damages. No hearing at which Consolidated proved facts warranting such damages was held. Nonetheless, in June 2000, Consolidated obtained a default judgment in the amount sought.

Consolidated presented the June 2000 judgment to the law firm which controlled the trustee account holding the disputed 10 percent of Miller and Galande's insurance

3

settlement. In August 2000, the law firm released the approximately $16,000 to Consolidated.

After receipt of these funds, Consolidated continued to enforce the $1 million judgment. In July 2001, Consolidated recorded an abstract of judgment with the San Francisco Assessor-Recorder, thereby securing a $1 million judgment lien on the real property owned by Miller and Galande. In January 2003, Consolidated filed a memorandum of costs seeking more than $250,000 in postjudgment interest. The memorandum of costs did not acknowledge any credit in partial satisfaction of the judgment, despite Consolidated's receipt of approximately $16,000.

Around this time, Miller and Galande finally received notice of the lawsuit. In May 2003, they moved to vacate the default judgment, but the case was stayed prior to a ruling on the motion because, in November 2000, Miller had filed for bankruptcy. In March 2009, after the bankruptcy proceedings concluded, the trial court vacated the default judgment against respondents.

The litigation recommenced. The record is not clear as to whether Consolidated continued to pursue $1 million in damages, but it appears that, once its adversary was actually present in the proceedings, it abandoned this remedy. A bench trial was held in April 2010 and judgment for respondents was entered in March 2011, stating that Consolidated "shall take nothing by reason of [its] Complaint."[4]

*The Current Lawsuit*

In February 2012, respondents filed the instant lawsuit against Consolidated; Hedden, Consolidated's president; and Merchasin, Consolidated's attorney in the underlying lawsuit. Respondents' complaint alleges a claim for malicious prosecution, as well as a number of other claims not relevant to this appeal. The complaint alleges, inter

---

[4] Although the judgment does not address the approximately $16,000 Consolidated received after entry of the default judgment, language in the accompanying statement of decision indicates that respondents did not seek to recover this sum at trial and that the court found Consolidated was entitled to retain it.

alia, appellants "filed the [underlying lawsuit] claiming damages of [$1 million] when in actuality their damages were less than [$30,000]."**5**

Appellants filed an anti-SLAPP motion pursuant to Code of Civil Procedure section 425.16 seeking to strike all of respondents' claims. Citing *Citi-Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.* (2003) 114 Cal.App.4th 906 (*Citi-Wide*), the trial court denied appellants' anti-SLAPP motion with respect to the malicious prosecution claim, finding "sufficient evidence from which a trier of fact could conclude that [appellants] filed and prosecuted a lawsuit against [respondents] that, even if supported by probable cause as to some amount, was entirely lacking in probable cause and pursued maliciously as to the amount actually sought by [appellants]." The trial court struck appellants' remaining claims. This appeal followed.

DISCUSSION

When analyzing an anti-SLAPP motion, " '[f]irst, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278 (*Soukup*).) The trial court found the challenged cause of action arose from protected activity, and respondent does not contest this finding.

"To establish a probability of prevailing, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.] For purposes of this inquiry, 'the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not *weigh* the credibility or comparative probative strength of

---

**5** The complaint also alleges appellants had "already been paid approximately [$16,000]," but the record is clear that this sum had not been paid at the time the underlying lawsuit was filed, and respondents so conceded during oral argument before the trial court.

competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' [Citation.] In making this assessment it is 'the court's responsibility . . . to accept as true the evidence favorable to the plaintiff . . . .' [Citation.] The plaintiff need only establish that his or her claim has 'minimal merit' [citation] to avoid being stricken as a SLAPP. [Citation.]" (*Soukup*, *supra*, 39 Cal.4th at p. 291.) Our review of the trial court's determination is de novo. (*Id.* at p. 269, fn. 3.)

The only claim at issue in this appeal is for malicious prosecution. "To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice. [Citation.]" (*Soukup, supra*, 39 Cal.4th at p. 292.) Appellants raise no challenges as to the first element. Instead, they argue respondents' allegation that appellants lacked probable cause as to the remedy of $1 million is insufficient to support a claim for malicious prosecution. Appellants also contend the malicious prosecution claim is based on subsidiary procedural acts that cannot be the basis for a malicious prosecution claim. Finally, they claim respondents failed to submit sufficient admissible evidence to demonstrate a probability of prevailing on the claim.

I. *The $1 Million Remedy*

Respondents' malicious prosecution cause of action alleges the underlying lawsuit lacked probable cause because, inter alia, appellants "filed the [underlying lawsuit] claiming damages of $1 million when in actuality their damages were less than [$30,000]."

As an initial matter, in their introduction, appellants appear to claim respondents, in one line of their opposition brief below, abandoned this theory. We do not consider this cursory contention because appellants do not include it in the argument section of their brief and cite no authority to support their position. (*Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 956 [" 'The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' [Citations.]"].)

6

In any event, we note that at the hearing before the trial court on appellants' anti-SLAPP motion, respondents' counsel explicitly denied abandoning this theory.

Appellants next contend, even if respondents established the necessary factual showing for this claim, as a matter of law it cannot support a malicious prosecution cause of action. Assuming for the purposes of this discussion that the following facts are shown, we disagree.

The complaint in the underlying lawsuit set forth multiple contract-based causes of action. The allegations in the complaint identified damages of $25,000 on the retainer agreement and $7,000 for the money lent. The complaint attached the retainer agreement and a note for the $7,000 signed by Galande. Respondents concede there was probable cause for contract-based claims for approximately $30,000. However, there is no basis in the allegations of the complaint to seek damages greater than that amount.

Thus, the appearance of a prayer for *$1 million* — even sought as it is "[i]n the alternative" — is difficult to explain. Appellants' only effort to do so is in a declaration submitted by Merchasin, the attorney who litigated the underlying lawsuit: "It was my opinion that significant fact-based discovery could potentially uncover tort[i]ous conduct with regard to [respondents'] untimely dismissal of Consolidated Adjusting, Inc. so as to support a tort claim based on for example, promissory fraud, or other cognizable tort theories. I note that I had some facts and reasonable inferences that could reasonably support such theories at the outset but proceeding in the abundance of caution I thought it was more prudent to withhold those causes of action pending further fact investigation. Such claims, with an allowance for punitive damages, could have reasonably supported a million dollar judgment in this case given the size of the claimed loss, the nature and circumstances of Consolidated Adjusting, Inc.'s dismissal, [respondents'] possible theft of valuable services, the degree of [respondents'] culpability, the potential involvement of the insurance carrier, the body of work expended by Consolidated Adjusting, Inc., the wealth of the parties, the costs incurred by Consolidated Adjusting, Inc., etc." Although Merchasin alludes to the existence of "facts and reasonable inferences" supporting this potential tort cause of action, neither he nor any other appellant ever identifies them.

7

Including an alternative remedy in the prayer for relief that is entirely unjustified by the allegations in the complaint, and is only *potentially* warranted by a cause of action that is *not* in the complaint (apparently because it was too speculative to include based on the facts known at the time of filing) is not a practice we endorse. However, it does not, alone, constitute malicious prosecution. "In a contested case, a prayer that seeks the wrong relief or fails to demand adequate relief is not a serious defect. If the defendant answers, the court may grant 'any relief consistent with the case made by the complaint and embraced within the issue,' and the rule is well settled that in a contested case the plaintiff may secure relief different from or greater than that demanded. [Citations.]" (4 Witkin, Cal. Procedure (5th ed. 2008) Pleadings, § 497, p. 633.)[6] The mere inclusion of an alternative prayer for relief not warranted by the allegations of the complaint does not " 'harm[] the individual against whom the claim is made . . . [or] threaten[] the efficient administration of justice,' " the evils targeted by the malicious prosecution cause of action. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 969 (*Zamos*).) Accordingly, the filing of the complaint alone does not constitute malicious prosecution.

This does not end our inquiry, however, because liability for malicious prosecution may derive from "continuing to prosecute a lawsuit discovered to lack probable cause." (*Zamos*, *supra*, 32 Cal.4th at p. 970.) Appellants did more than simply include $1 million as an alternative remedy prayed for in the complaint. They sought an admission that such an amount was owed and, when no answer was filed or response to their discovery requests received, they sought a court order deeming the requests admitted and sought a default judgment for $1 million. Then, after receipt of approximately $16,000 from the insurance settlement — when appellants could at most claim to be entitled to an additional $7,000 for the unpaid loan — appellants *continued* to

---

[6] We note, however, that a complaint's prayer for relief takes on additional significance in default cases, as the relief granted in a default judgment may not exceed that demanded in the complaint. (6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 149, p. 583.)

8

enforce the $1 million default judgment, recording a $1 million lien on respondents' property and seeking postjudgment interest of more than $250,000.

Appellants never amended the complaint to include factual allegations and a cause of action supporting such a remedy. There is also no evidence of any specific facts known by appellants that could have justified such a remedy. In his declaration, Merchasin attempts to blame respondents for appellants' failure to procure such facts, asserting that he "sought to obtain additional facts and pursue further investigation prior to seeking entry of a default" but was "stymied" by the "non-appearance and non-responsiveness of [respondents]." They did not respond because they had not received notice of the lawsuit or the discovery requests. While we express no opinion as to whether appellants purposefully effected service in a manner not likely to result in actual notice, we note that respondents submitted evidence that Consolidated had alternate contact information for respondents, yet appellants made no attempts to ensure they received actual notice of the lawsuit or the discovery.

Effectively, appellants construed their complaint to state a tort cause of action, which it did not in fact allege, that could theoretically support a damages remedy of $1 million, although there is no evidence that they knew of facts justifying such a remedy. We have little difficulty concluding that under such circumstances, a party lacks probable cause to pursue and enforce a default judgment for $1 million.

Appellants argue an amount requested solely in a complaint's prayer for relief cannot be the basis for a malicious prosecution action, citing authorities for the proposition that the prayer for relief is not part of the statement of the cause of action. These authorities would be helpful to appellants had they never pursued the $1 million remedy sought in the prayer for relief. Instead, the authorities only underscore the unreasonableness of appellants' pursuit of such a remedy when its *only* basis appeared in the prayer for relief. Appellants' reliance on Code of Civil Procedure section 431.10, which provides that a demand for relief not supported by the allegations of the complaint is an "immaterial allegation," is similarly unhelpful as appellants sought a remedy solely on the basis of such an immaterial allegation.

9

Appellants contend that the prayer for relief cannot support a malicious prosecution claim "since it is neither a factual averment nor a 'legal theory.' " " 'A litigant will lack probable cause for his action either if he *relies upon facts which he has no reasonable cause to believe to be true*, or if he *seeks recovery upon a legal theory which is untenable* under the facts known to him.' [Citation.]" (*Soukup*, *supra*, 39 Cal.4th at p. 292, italics added.) According to the facts alleged, appellants sought recovery on a legal theory not pled in the complaint and, therefore, the recovery was patently untenable. Moreover, appellants proceeded in the absence of facts to support a remedy of $1 million. These circumstances constitute lack of probable cause for purposes of a malicious prosecution claim. The fact that the $1 million remedy appeared in the prayer for relief rather than in the allegations of the complaint is of no consequence.

That appellants had probable cause to bring contract claims for approximately $30,000 does not alter our analysis because, as the Supreme Court has repeatedly affirmed, "[p]robable cause . . . must exist for every cause of action advanced in the underlying action. '[A]n action for malicious prosecution lies when but one of alternate theories of recovery is maliciously asserted . . . .' " (*Soukup*, *supra*, 39 Cal.4th at p. 292, quoting *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 57, fn. 5; see *Crowley v. Katleman* (1994) 8 Cal.4th 666, 679, 695.) Accordingly, appellants' probable cause to allege contract-based claims for a substantially smaller amount of damages does not relieve them of malicious prosecution liability for pursuing $1 million under a hypothetical tort claim.

In light of our analysis above, we need not and do not rely on *Citi-Wide*. In *Citi-Wide*, the court held that malicious prosecution liability may lie for a defendant who had probable cause to seek a certain measure of damages on a breach of contract claim in the prior action, but sought a substantially greater measure of damages on that claim for which it lacked probable cause. (*Citi-Wide*, *supra*, 114 Cal.App.4th at p. 914.) In this case, unlike in *Citi-Wide*, appellants did not seek the $1 million remedy on their contract claims, for which they had probable cause to pursue damages of approximately $30,000.

10

Instead, appellants sought the $1 million remedy pursuant to an unidentified tort cause of action that was not pled in the complaint and for which there is no evidence of probable cause.

In sum, we conclude that, in the circumstances of this case, a party lacks probable cause to pursue and enforce a $1 million default judgment based on a tort cause of action that was not alleged in the complaint and for which there was no factual basis.[7]

II. *Subsidiary Procedural Actions*

"[S]ubsidiary procedural actions cannot be the basis for malicious prosecution claims. [Citations.]" (*Zamos, supra,* 32 Cal.4th at p. 969, fn. 8.) Accordingly, "courts have determined that the following proceedings cannot give rise to a malicious prosecution claim: requests for admissions [citation]; . . . filing appeals [citation]; applications for an order to show cause regarding contempt [citation]; [and] motions to disqualify an attorney [citation] . . . ." (*Merlet v. Rizzo* (1998) 64 Cal.App.4th 53, 60.) For example, in *Twyford v. Twyford* (1976) 63 Cal.App.3d 916, a malicious prosecution claim was based on the filing of a request for admission in a marital dissolution action that was otherwise proper. The Court of Appeal held that the filing of a request for admission "is not a separate proceeding and has no independent existence," and therefore "will not support a malicious prosecution complaint." (*Id.*, at p. 922.)

Appellants argue "[t]he filing of a request for a default judgment is purely a subsidiary procedural step and doing so cannot be the basis of a malicious prosecution claim." Were respondents solely challenging this procedural step in a lawsuit that they

---

7   Though appellants recovered $16,000 in the underlying lawsuit, they do not argue that the underlying lawsuit was not terminated in respondents' favor, one of the elements of a malicious prosecution claim. Appellants do not argue, and we do not determine, whether the favorable termination element can be satisfied when a malicious prosecution plaintiff loses a severable claim in the underlying litigation. (Compare *StaffPro, Inc. v. Elite Show Services, Inc.* (2006) 136 Cal.App.4th 1392, 1405 ["severability analysis is improper in determining whether a malicious prosecution plaintiff has demonstrated favorable termination of an underlying lawsuit"] with *Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1153 ["a malicious prosecution plaintiff is not precluded from establishing favorable termination where severable claims are adjudicated in his or her favor"].)

11

otherwise conceded was proper, appellants' contention might have merit. However, respondents contend the lawsuit itself was maliciously prosecuted to the extent it pursued damages of $1 million. They challenge the default judgment because it sought a remedy improperly sought by the lawsuit itself. Respondents' claim is not based on subsidiary procedural acts.

III. *Sufficiency of the Evidence*

Finally, appellants' argue respondents failed to submit sufficient admissible evidence to demonstrate a likelihood of success with respect to the elements of probable cause and malice.[8] "To show a likelihood of success, '[t]he plaintiff's showing of facts must consist of evidence that would be admissible at trial.' [Citation.] The plaintiff may not rely on the allegations in the complaint or assertions in a declaration based on information and belief. [Citations.] However, to meet his or her burden, the plaintiff need only make a ' "sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citation.]" (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1368.)

A. *Probable Cause*

There is evidence in the record, which could be credited by a trier of fact, that (1) appellants filed a complaint that provided no basis in fact or law to pursue a remedy of $1 million; (2) even though respondents had informed appellants they were residing at a new address, appellants nonetheless served the summons, complaint, and discovery requests to respondents' prior address at the property that had been damaged in the fire; (3) appellants then sought and obtained a default judgment for $1 million; and (4) after receiving approximately $16,000 from the insurance settlement, appellants proceeded to file a $1 million judgment lien on respondents' property and a memorandum of costs seeking more than $250,000 in postjudgment interest. In addition, Merchasin submitted a

---

[8]  For the first time in their reply brief, appellants contend respondents failed to submit evidence demonstrating damages. " ' "[P]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before. [Citation.]" [Citation.]' [Citation.]" (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1478.) No such reason is present here.

declaration explaining that the basis for the $1 million remedy was a hypothetical tort cause of action that was not pled in the complaint, and there is no evidence of facts justifying $1 million in damages. As previously discussed (see, *ante*, part I.), this evidence is sufficient to satisfy respondents' burden as to the element of probable cause.

The only challenge appellants raise on appeal to the admissibility of the evidence is that respondents submitted declarations based on information and belief rather than personal knowledge. However, the complaint, discovery requests, default judgment, and memorandum of costs were submitted and authenticated by appellants, and "gaps in a party's evidentiary showing [in opposing an anti-SLAPP motion] may . . . be filled by the opposing party's evidence. [Citation.]" (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1289, disagreed with on other grounds in *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 474, fn. 8.) Declarations from Miller and Galande, sworn to on the basis of personal knowledge and stating that they informed Consolidated of their new address and telephone numbers, were submitted in the underlying lawsuit and resubmitted to the trial court.

Finally, a copy of the check evidencing the approximately $16,000 payment to appellants and a copy of the judgment lien were submitted into evidence. Although the documents may not have been properly authenticated, appellants have not contested their authenticity or disputed the fact that they received the payment and recorded the judgment lien. Where, as here, there is a "high probability [a party] would succeed in offering the [documents] into evidence at trial," the failure to properly authenticate evidence will not defeat a plaintiff's attempt to satisfy "the 'minimal' showing necessary to overcome a SLAPP motion." (*Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1148, fn. omitted ["Generally, authentication problems tend to be among the easiest evidentiary dilemmas to overcome once they are called to the party's attention."].)**9**

---

**9** On March 22, 2013, respondents asked us to take judicial notice of a number of documents. Many of the requested documents were not presented to the trial court. "Reviewing courts generally do not take judicial notice of evidence not presented to the

B. *Malice*

The element of malice " 'relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.]" (*Soukup*, *supra*, 39 Cal.4th at p. 292.) "The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive.' [Citations.]" (*Ibid.*) "[T]he 'principal situations in which the civil proceedings are initiated for an improper purpose [include] those in which . . . the person initiating them does not believe that his claim may be held valid . . . [or] the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property . . . .' [Citation.]" (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 383.) "Malice is usually proved by circumstantial evidence. [Citation.] Although a lack of probable cause, standing alone, does not support an inference of malice, malice may still be inferred when a party knowingly brings an action without probable cause. [Citation.]" (*Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 522.)

Appellants argue respondents made no showing of malice because appellants "simply put [respondents] on notice as to the potential amount of liability in the event of a default judgment" and then "sought to engage in discovery prior to requesting entry of a default to more precisely pin-point the proper measure of damages." But appellants also sought and enforced a default judgment for $1 million in the absence of any allegations in the complaint or factual basis justifying such an award. There is also evidence that, if

trial court," and respondents have not shown the requisite "exceptional circumstances . . . that would justify deviating from that rule." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) We therefore deny respondents' request as to these documents and disregard all references to them in respondents' brief. (*People v. Thacker* (1985) 175 Cal.App.3d 594, 599.) Other requested documents — the retainer agreement, the $16,000 check, and the insurance settlement agreement — are already in the record by other means and are not proper subjects of judicial notice. The abstract of judgment, as discussed above, has not been properly authenticated although respondents are highly likely to be able to cure this error at trial. Accordingly, we deny respondents' request as to the above documents. We further deny as unnecessary respondents' request as to the transcript of the anti-SLAPP hearing before the trial court because an original certified transcript is already part of the record on appeal. We grant respondents' request only as to the statement of decision in the underlying lawsuit, which was before the trial court and as to which appellants do not object.

credited by a trier of fact, could support an inference that appellants purposefully served the summons, complaint, and discovery to an address at which they knew respondents did not reside, thereby increasing the chances of a default. Merchasin's declaration concedes that he based the $1 million prayer for relief on a tort claim that was never included in the complaint, and that he needed "fact-based discovery" — which did not take place prior to the default judgment — to "potentially uncover" facts to support such a claim. A trier of fact could infer from this evidence that appellants did not believe a remedy of $1 million was valid.

Respondents also submitted evidence that three weeks after the fire, Hedden asked Miller to transfer to him the property and all future insurance proceeds. A trier of fact could infer from this evidence that Hedden wanted to obtain more from respondents than he was entitled to under the retainer agreement. Although the evidence appears in a declaration submitted by Miller that is sworn to be "true and correct to the best of my information and belief," rather than on personal knowledge, the sworn fact is plainly within Miller's personal knowledge. Where, as here, "declarations contain no express averments that they were made on the basis of personal knowledge, [but] the statements in the declarations make clear that the declarants had actual personal knowledge, . . . the declarations sufficiently demonstrated that they were made on the basis of personal knowledge." (*Tutti Mangia Italian Grill, Inc. v. American Textile Maintenance Co.* (2011) 197 Cal.App.4th 733, 742.)

In sum, respondents submitted sufficient admissible evidence to demonstrate the "minimal merit" required to survive an anti-SLAPP motion.

## DISPOSITION

The trial court's order denying appellants' anti-SLAPP motion with respect to respondents' malicious prosecution claim is affirmed. Respondents are awarded their costs on appeal.

15

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.