[No. B160823. Second Dist., Div. One. Dec. 30, 2003.]

CITI-WIDE PREFERRED COURIERS, INC., Plaintiff and Appellant, v. GOLDEN EAGLE INSURANCE CORPORATION, Defendant and Respondent.

**COUNSEL**

Stolpman, Krissman, Elber & Silver and Dennis M. Elber for Plaintiff and Appellant.

Law Offices of Timothy A. Gonzales and Timothy A. Gonzales for Defendant and Respondent.

**OPINION**

**VOGEL (Miriam A.), J.**—We hold that, just as a malicious prosecution suit may be maintained where only one of several claims in the underlying action lacked probable cause, so too can a malicious prosecution action be maintained where most but not all of the amount sought in the underlying action was claimed without probable cause. We reverse a judgment based on the opposite conclusion.

## FACTS

### A.

"In 1995, Citi-Wide Preferred Couriers, Inc. purchased a one-year workers' compensation insurance policy from Golden Eagle Insurance Company (for which Citi-Wide paid $7,464). In mid-1996, Golden Eagle 'audited' Citi-Wide's payroll records, then billed Citi-Wide $7,861 for 'additional earned premiums' based on a miscalculation by Golden Eagle about the number of people employed by Citi-Wide. Citi-Wide refused to pay the additional premium, explained the miscalculation, and suggested a re-audit. Golden Eagle declined the offer and sued Citi-Wide for $7,861. Golden Eagle was represented by Leonard Lerner and his firm, Lerner, Weiss & Wynne. Citi-Wide retained Carlos Fournier (the brother of Citi-Wide's owner, Stewart Fournier)." (*Citi-Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Co.* (July 30, 2001, B140740) [nonpub. opn.] (*Citi-Wide I*).)[1]

"Discovery ensued, and in September 1997, Golden Eagle conceded (in response to an interrogatory propounded by Citi-Wide) that Citi-Wide owed 'not less than $1,900.' Golden Eagle then offered to settle for something in the neighborhood of $1,500 to $1,900 (but never offered any explanation for how it arrived at that amount). In November, Carlos Fournier committed suicide.

"On March 3, 1998, about two weeks before trial, Stewart Fournier called Lerner (Golden Eagle's lawyer) to ask whether the matter could be resolved without trial so that Citi-Wide would not have to hire another lawyer. During that conversation, Lerner acknowledged Carlos Fournier's suicide, told Stewart Fournier that his brother had been 'stupid,' and refused to discuss a settlement with Stewart Fournier.

"On Thursday, March 12 (with trial set for Monday, March 16), Lerner sent a letter to Stewart Fournier, demanding $7,900 and ignoring the fact that Golden Eagle had essentially conceded (in response to the interrogatory) that the maximum amount owed was $1,900:

[1] In January 1997, the Insurance Commissioner initiated conservatorship proceedings against Golden Eagle Insurance *Company*, and a final order approving a rehabilitation plan was entered by the San Diego Superior Court in August of that year. On this appeal, the newly created entity, Golden Eagle Insurance *Corporation*, contends the relationship between the Company and the Corporation is one of agency rather than assignment, but the manner in which the trial court resolved Citi-Wide's claims makes it inappropriate for us to consider this issue at this time. Accordingly, our references to "Golden Eagle" include both the Company and the Corporation, and we leave it to the trial court on remand to determine the extent of each entity's liability, if any.

" 'I sincerely appreciate that you do not wish to litigate this matter. Quite frankly, just hiring an attorney and appearing on Monday['s trial date] to attempt to continue this matter, which I assume is your next move, will probably cost you more than this entire case is worth. . . . You are making some fairly ugly remarks which frankly we do not appreciate. If you think you are able to prove your case, then certainly hire an attorney and we will be ready to go Monday morning. . . . Your self-serving conclusion about what you owe is simply not impressive. . . .

" 'I have absolutely no problem telling you that if we go to trial Monday, we are going to put our best foot forward, and in all likelihood, a judgment for $7,900 plus costs and interest will be awarded against you.

" 'Should you and/or your legal counsel decide to become reasonable in short order, that is when you should contact me.'

"On Monday, March 16, 1998, the case was called for trial. Golden Eagle answered ready. So too did Citi-Wide, explaining that it had retained Stolpman, Krissman, Elber, Mandel & Katzman. In response, Lerner dismissed Golden Eagle's case with prejudice and, by a written stipulation signed by Lerner and a lawyer from the Stolpman firm, agreed that Citi-Wide had 'fully paid' the premiums due under its policy, and that Golden Eagle's dismissal was without prejudice to Citi-Wide's right to sue Golden Eagle for malicious prosecution and for violation of the duty of good faith and fair dealing. The parties also agreed to pay their own costs." (*Citi-Wide I, supra.*) In short, there was an "unconditional surrender" by Golden Eagle. (*Id.* (conc. opn. of Ortega, J.).)

## B.

In March 1999, Citi-Wide sued Golden Eagle, Leonard Lerner, and Lerner's partners and law firm for malicious prosecution. In January 2000, Golden Eagle and the Lerner law firm moved for summary judgment, contending there was no "favorable termination" of the underlying action, and that there was probable cause to file it. Over Citi-Wide's opposition, both motions were granted, and Citi-Wide appealed. We found triable issues of material fact and reversed both summary judgments.

In March 2002, with trial set for April, Golden Eagle filed several motions in limine, one of which sought an order precluding Citi-Wide from presenting any evidence to show that Golden Eagle lacked probable cause to prosecute the underlying action—on the ground that Stewart Fournier had "admitted" at

his January 2000 deposition that Citi-Wide owed $1,472.26 to Golden Eagle.[2] Over Citi-Wide's opposition, the motion was granted. Although the record is not a model of clarity, the trial court seems to have accepted the argument that Citi-Wide's acknowledgement of *any* debt to Golden Eagle had to mean that, as a matter of law, Golden Eagle had probable cause to sue Citi-Wide, notwithstanding the extent of the disparity between that which was owed and that which was sought.

With the probable cause issue resolved against Citi-Wide, there was no need for a trial and an order of dismissal was entered. This appeal followed.

## DISCUSSION

### I.

Implicit in the trial court's approach to this case is its apparent assumption that, as a matter of law, a creditor who sues for a million dollars had probable cause to sue if the debtor "admits" that a dollar was owed. As we explain, the trial court was mistaken.

### A.

" 'To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' " (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676 [34 Cal.Rptr.2d 386, 881 P.2d 1083], quoting *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608]; see also *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498].)

"The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against *a fabricated claim* which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings. In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action

---

[2] Citi-Wide's purported "admission" was quoted out of context and is not as absolute as characterized by the trial court.

including reasonable attorney's fees [citations], compensation for injury to his reputation or impairment of his social and business standing in the community [citations], and for mental or emotional distress [citation].

"The judicial process is adversely affected by a maliciously prosecuted cause not only by the clogging of already crowded dockets, but by the unscrupulous use of the courts by individuals '. . . as instruments with which to maliciously injure their fellow men.' [Citation.]" (*Bertero v. National General Corp., supra,* 13 Cal.3d at pp. 50–51, italics added.)[3]

## B.

The probable cause analysis in this case must focus on Golden Eagle, the plaintiff in the underlying action, and not on the lawyers who represented Golden Eagle at that time—because the lawyers are not parties to this appeal, and because Golden Eagle did not claim in its answer that it relied on the advice of counsel when it initiated its case against Citi-Wide. (Compare *Bertero v. National General Corp., supra,* 13 Cal.3d at pp. 53–54, where reliance on counsel was raised as an affirmative defense; and compare *Sheldon Appel Co. v. Albert & Oliker, supra,* 47 Cal.3d at pp. 881–882, where the court is concerned only with the facts known by the lawyer, not with the party's knowledge.)

Where, as here, there is a dispute as to the state of Golden Eagle's knowledge and the existence of probable cause turns on a resolution of that dispute, the malicious prosecution plaintiff (Citi-Wide) has a right to have the jury "resolve the threshold question of [Golden Eagle's] factual knowledge or belief. Thus, [because] there is evidence that [Golden Eagle] may have known *that the factual allegations on which [its] action depended were untrue,* the jury must determine what facts [Golden Eagle] knew before the trial court can determine the legal question whether such facts constituted probable cause to institute the challenged proceeding." (*Sheldon Appel Co. v. Albert & Oliker, supra,* 47 Cal.3d at p. 881, italics added.)

And although the existence of probable cause is determined in part by an objective test—whether the party filing suit had " ' "a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the

---

[3] *Bertero* holds that an action for malicious prosecution lies when it is based on the prosecution of a maliciously filed cross-pleading. (*Bertero v. National General Corp., supra,* 13 Cal.3d at pp. 50–53.) In that context, the Supreme Court rejected the argument that the cross-complaints had been "compelled to assert their cause of action under threat of being deemed to have waived," noting that a "litigant is never compelled to file a malicious and fabricated action. *It is not the assertion of a claim that is actionable but rather the malicious character of the assertion.*" (*Id.* at p. 52, italics added.)

belief that the charge [was] true" ' "—a jury must be told that " '[i]f a person initiating a judicial proceeding does not have *an actual and honest belief in the validity of the claim asserted by him* then he does not have . . . probable cause to initiate such proceedings.' " (*Bertero v. National General Corp., supra,* 13 Cal.3d at p. 55, italics added.) If Golden Eagle "kn[ew] that [its] claim [was] groundless, [it could] not have [had] an actual or honest belief in its validity, and [it thus] may not escape liability for commencing an action based on such a claim merely because a reasonable man might have believed it was meritorious." (*Ibid.*)

When the Supreme Court reaffirmed these rules in *Crowley v. Katleman, supra,* 8 Cal.4th 666, it flatly rejected an argument that would have limited a malicious prosecution action to those situations where every part of every claim asserted in the underlying action was prosecuted without probable cause. As *Crowley* explains, "probable cause" and "favorable termination" are separate and distinct elements that serve different purposes in the analysis of the malicious prosecution tort: " 'Whether a prior action was legally tenable goes to the issue of probable cause, that is, did the defendant have an honest and reasonable belief in the truth of the allegations. [Citation.] Whether a prior action was terminated favorably tends to show the innocence of the defendant in the prior action [citations], and is not affected by the objective tenability of the claim.' " (*Id.* at p. 686, quoting *Warren v. Wasserman, Comden & Casselman* (1990) 220 Cal.App.3d 1297, 1303 [271 Cal.Rptr. 579].)

■ Thus, the rule is that a malicious prosecution suit may be maintained where only one of several claims in the prior action lacked probable cause, notwithstanding that there must first be a favorable termination of the entire underlying action. (*Crowley v. Katleman, supra,* 8 Cal.4th at p. 686.)

## C.

With these rules in mind, we address the particulars of the case before us.

First, there was and is a dispute as to the state of Golden Eagle's knowledge at the time it sued Citi-Wide for $7,861 (as evidenced by Golden Eagle's admission during discovery that the amount owed was about $1,900). Since the resolution of the probable cause issue turns on a resolution of this dispute, Citi-Wide has a right to have the jury resolve the threshold question of Golden Eagle's knowledge or belief—whether the factual allegations on which Golden Eagle's claims depend were untrue—and it is only after that finding of fact is made that the trial court can determine whether such facts constituted probable cause to institute the underlying action. (*Sheldon Appel Co. v. Albert & Oliker, supra,* 47 Cal.3d at p. 881.)

■ Second, the mere fact that some small amount of money may have been owed by Citi-Wide does not bar Citi-Wide's malicious prosecution claim—because neither Citi-Wide nor the judicial process was any the less adversely affected by reason of this technicality. Golden Eagle's case still clogged the already filled docket, and its lawsuit arguably served as an instrument with which to maliciously injure a small business and its owner. (*Bertero v. National General Corp., supra,* 13 Cal.3d at pp. 50–51.)

■ Third, just as the rule is that a malicious prosecution suit may be maintained where only one of several claims in the prior action lacked probable cause (*Crowley v. Katleman, supra,* 8 Cal.4th at p. 686), so too can a malicious prosecution action be maintained where most but not all of the amount sought in the prior action was claimed without probable cause.

In this context, it is helpful to revisit the underlying action—and to remember that Golden Eagle grossly miscalculated the amount owed by Citi-Wide, refused to respond to Citi-Wide's requests for clarification, refused to accept Citi-Wide's invitation to re-audit its payroll records, and pretended it was a taxing authority by demanding payment in full before it would even consider a protest. After Golden Eagle sued Citi-Wide for $7,861, Golden Eagle *admitted* that the amount due was something around $1,900, and offered to settle—but still would not explain how it arrived at either figure. When Citi-Wide found itself without a lawyer, Golden Eagle then refused to settle for anything less than $7,900 and insisted it would recover the full amount plus costs. Of course, as we know, Golden Eagle spun around, admitted that Citi-Wide's premiums were fully paid, and ran out of court when it realized that Citi-Wide was armed with new lawyers and ready for trial.

■ Hence, the trial court's use of a motion in limine to resolve the probable cause issue, based as it was on the trial court's apparent belief that Citi-Wide's "admission" of some small liability resolved the probable cause issue in favor of Golden Eagle, was plainly erroneous and cannot stand.

## II.

As a matter of law, the underlying action terminated in Citi-Wide's favor. "Golden Eagle announced ready on the day of trial, then immediately abandoned its case when it learned it was in for a contest, then signed a stipulation admitting that the premiums had been fully paid. These events are undisputed. This was not a case settlement, but an unconditional surrender by Golden Eagle, due solely to the merits (or more accurately, lack thereof) of the [underlying] lawsuit. How much more favorable can a termination be? Citi-Wide didn't even have to answer the opening bell. All it had to do to

claim victory was show up. The entire episode constitutes an admission by Golden Eagle that it lost on the merits." (*Citi-Wide I, supra* (conc. opn. of Ortega, J.); and see *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750–751 [159 Cal.Rptr. 693, 602 P.2d 393]; *Pattiz v. Minye* (1998) 61 Cal.App.4th 822, 826–827 [71 Cal.Rptr.2d 802]; *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 27 [43 Cal.Rptr.2d 350]; *Oprian v. Goldrich, Kest & Associates* (1990) 220 Cal.App.3d 337, 344–345 [269 Cal.Rptr. 429].)

There is no evidence to support any other conclusion, and this issue is now determined for all purposes.[4]

## DISPOSITION

The judgment (order of dismissal) is reversed and the cause is remanded to the trial court with directions (1) to assign this case to a judge other than the judge to whom it has been assigned (Code Civ. Proc., § 170.1, subd. (c)), and (2) to set the case back on track for a jury trial. Citi-Wide is awarded its costs of appeal.

Spencer, P. J., and Ortega, J., concurred.

A petition for a rehearing was denied January 16, 2004, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 21, 2004. Werdegar, J., did not participate therein.

---

[4] The other issues raised in Citi-Wide's brief are either moot or incapable of resolution at this stage since the case has yet to be tried. The same is true with regard to Golden Eagle's effort to limit its liability to a fixed period in time.