Filed 8/27/14  SFL Paramount v. Friendly Village Mobile Associates CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SFL PARAMOUNT, LLC, | B249964 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. NC058481) |
| FRIENDLY VILLAGE MOBILE ASSOCIATES, LLC, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Michael P. Vicencia, Judge.  Affirmed.

Edgerton & Weaver, Chad E. Weaver and Jacquelyn M. Mohr for Defendant and Appellant.

Smith, Mark T. Kearney and Steven C. Smith for Plaintiff and Respondent.

_____

Defendant Friendly Village Mobile Associates, LLC (Friendly Village) appeals from the trial court's order denying its anti-SLAPP motion under Code of Civil Procedure section 425.16[1] in this malicious prosecution action brought by SFL Paramount, LLC (SFL). We find, although this action arises from protected activity within the meaning of the anti-SLAPP statute, SFL has demonstrated its malicious prosecution action has at least the minimal merit required to demonstrate a probability of prevailing and to survive the anti-SLAPP motion. Accordingly, we affirm.

## BACKGROUND

**The Parties and Their Dispute**

Friendly Village and SFL owned neighboring parcels of land in the City of Long Beach, located on a site formerly used as a garbage dump. Friendly Village used its property to operate a mobile home park, containing 182 mobile homes, two apartment buildings, a clubhouse and a pool. Twenty-four of the mobile homes were situated along the southern border of Friendly Village's property, adjacent to SFL's property. The mobile home park was built on top of the garbage dump. Thus, the soil underneath was filled with refuse.

When SFL acquired the property next to the mobile home park in 2005, SFL's property was a vacant lot. The prior owners had planned to turn the property into a self-storage facility. SFL continued with this plan. SFL decided the appropriate way to develop the property—and to promote stability and avoid subsistence problems at the property—was to grade and excavate the property by making vertical cuts in the soil, scraping off the top soil, removing the garbage under the top soil, and removing the waste from the property. Before beginning the work, SFL had visited Friendly Village's property and observed the effects of building on top of garbage: sinking land (or settlement) and cracking concrete throughout the mobile home park.

Beginning in 2004, the prior owners and then SFL performed the grading and excavation work under permits obtained from several governmental agencies, including

---

[1] Further statutory references are to the Code of Civil Procedure.

2

the City of Long Beach, County of Los Angeles and Air Quality Management District (AQMD).  Before the work began SFL provided its neighbors, including Friendly Village, with notice of the work and the dates of public hearings regarding the work.  Representatives of Friendly Village attended the hearings.  Friendly Village did not raise objections regarding the work at these hearings.  Nor did Friendly Village complain about the grading and excavation work which SFL completed prior to late 2007.

On December 28, 2007, Friendly Village's counsel sent a letter to SFL's counsel, listing damage to its property and the mobile homes it contended was caused by SFL's grading, excavation and construction work on the adjacent property.  In pertinent part, this letter states:

"The vibration of your construction equipment has caused substantial damage to homes and infrastructure in my client's mobilehome park, including, but not limited to, the common area, settling of mobilehomes, cracks in the mobilehomes of tenants, cracks in the roadway, [fissures] in the ground, etc.  Along the southerly border of the property, about 15 to 18 feet in from the property line, a large [fissure] has occurred running in an east west direction.  It is apparent that this [fissure] is as a result of the grading and construction activities on your property, and in fact, the [fissure] appears to be created by land separating and moving in a southerly direction, i.e., towards your property.  At one point during your construction project, the vibration (your construction equipment busted a water line in the mobilehome park).  We suspect that vibration may have been the cause of this, but, in any event, the breaking of the water line was caused by you or your contractor's activities.  My client in fact hired plumbers and fixed that break in the water line.  On Christmas eve, an SCE [Southern California Edison] electrical truck line was severed on your property, and apparently, either [as] a result of the severance, or as a result of your contractor's efforts to repair same without SCE presence, transformers in my client's mobilehome park blew, causing the families in my client's mobilehome park to be without electricity from Christmas eve, through Christmas day, into Christmas night.  It was not before Christmas night that we were finally able to get trucks to fix the problem.

3

"If all the foregoing were not bad enough, on the 26th, rather than ceasing the grading and construction activities until appropriate analysis could be undertaken to understand what needed to be done to stabilize the situation, one of your back hoes crossed the property line into our property, breaking our water main, causing numerous of our residents to be without water for a considerable period of time, and further causing substantial water inundation in and around the area affected."

In this letter, Friendly Village's counsel requested SFL reimburse Friendly Village and the mobile home residents "for all costs associated with these identified problems," including "'resetting'" and "'releveling' of the homes as necessary." Counsel also demanded SFL "cease all grading, excavation and construction activities until we can determine the problems at the site, until we can clearly document the causes of the problems and concerns at the site, and until we can determine the appropriate measures to be taken to ensure that when construction, grading, and/or excavation resumes at your site, it will not undermine the integrity of my client's property, or cause damage to my client or my client's residents' property."

On December 29, 2007, an engineering geologist from GeoSoils, Inc. (GSI) "performed a visual observation of the south property line area of [Friendly Village]," at Friendly Village's request, as stated in a three-page report issued by GSI on January 4, 2008. GSI did not perform any "subsurface exploration." SFL did not grant GSI "permission to enter the offsite grading area, to evaluate the vertical cut slopes." After its visual inspection, GSI concluded:

"Based on our observations, it is clear that distress to the site is the direct result of failures within the offsite vertical cut, and in the case of the water line break at the storage area, excavation within the [Friendly Village] property with a backhoe. The distress to the slope has the potential for damaging water, gas, and electrical lines in the utility corridor along the south fence. There is a very real potential for ruptured gas lines and fire triggered by broken power lines which now lie on the ground in the utility meter and control area.

4

"It is apparent that the slope failures, and many of the ground cracks, which were observed up to 6 feet inside the [Friendly Village] south property line fence, are the direct result of excavating near vertical cuts during the offsite grading. Further, such failures need not have occurred. Construction methods are available which allow construction along property lines with no, or only very minor distress, to existing properties and structures. Soldier pile, and slot-cut wall construction methods are commonly used procedures that could have prevented the observed distress. Continued distress and or failure of the slope should be expected unless mitigation measures are implemented by the grading contractor."

GSI also noted in its report it "was previously called to the site in May of 2006 to observe the settlement around pile foundations in the clubhouse and pool area of the [mobile home] park." Friendly Village does not contend SFL's grading and excavation work caused the settlement in these areas of its property.

On January 2, 2008, SFL's counsel responded to the December 28, 2007 letter from Friendly Village's counsel, explaining why SFL did not believe it was responsible for the problems listed in the letter. Counsel asserted the Christmas Eve electrical outage was not related to SFL's project as SFL "had no workers on site that day." According to SFL's counsel, Southern California Edison (SCE) informed SFL it "had a problem in [the] lines servicing" Friendly Village.

In the letter, SFL's counsel acknowledged a backhoe driver nicked the water main "while attempting to bury the conduit for the electrical line." Counsel explained SCE had asked SFL "to speed up the placement of conduit" so SCE could pull the electrical lines servicing Friendly Village out of the refuse and place new lines in conduit to help avoid future outages like the one that occurred on Christmas Eve. Unbeknownst to SFL, Friendly Village's water main was located on SFL's property. According to SFL's counsel, SFL's "contractor immediately clamped the leak so that there was no long term loss of water. The clamp was temporary and water pressure was lost on the job for no more than 15 minutes. Thereafter, the contractor had a plumber come and replace the nicked pipe. Thereafter, [Friendly Village] had another plumber come out and put in

5

valves on one side or the other of the repair job to accommodate his desire to turn off the water main if he wanted to do so. That would be unrelated to the 15 minutes of downed water time."

SFL's counsel also asserted in the letter that the settling of, and cracks in, the mobile homes on Friendly Village's property was "a result of the condition of the soil upon which the trailers are located," not a result of SFL's project. Simply put, the mobile homes were "placed on trash." While disclaiming responsibility for the damage, counsel stated SFL had "work[ed] with the homeowners immediately adjacent to [SFL's] property [who had] made complaints to [SFL] . . . to try to level their trailers." SFL expressed a willingness to continue to work with Friendly Village to determine if SFL should assist in releveling.

SFL's counsel explained in the letter that SFL expected the grading phase of the project to last for 30 more days. SFL believed the work was being performed in accordance with the permits issued by the County of Los Angeles and the City of Long Beach and "obligations which are generally required by law."

**Underlying Action**

On January 8, 2008, Friendly Village filed the underlying action against SFL, asserting causes of action for injunctive relief, trespass, nuisance, negligence, conversion and negligent interference with prospective economic advantage (Case No. NC050697). Friendly Village alleged SFL's grading and excavation work caused "damage to the soils, hardscape and structures" at Friendly Village's property, including fissures, cracks, and a sinkhole 18 inches in diameter and three feet deep at the property line. Friendly Village also alleged SFL's construction work caused (1) a water pipe to break, resulting in flooding of Friendly Village's property and loss of water supply, (2) an electrical outage at the mobile home park, resulting from a fire in a transformer on SFL's property, (3) a water main to break, and (4) "significant dirt, noise and vibration." In its conversion cause of action, Friendly Village asserted SFL "wrongfully interfered with its possession and control of the piping and utilities" located on its property. In its negligent interference with prospective economic advantage cause of action, Friendly Village

6

alleged SFL interfered with its "prospective business advantage in operating a mobilehome park and in conducting business with its tenants with whom it has a continuing relationship."

Friendly Village sought an injunction requiring SFL "to cease and desist all construction work, including grading and excavation work, which continues to damage [Friendly Village]'s property," and "to maintain its property and refrain from causing damage to [Friendly Village's] property or interfering with [Friendly Village]'s business and economic relationship with its tenants." Friendly Village also sought an award of punitive damages against SFL.

On January 9, 2008, Friendly Village filed an ex parte application for a temporary restraining order prohibiting SFL from performing further construction work until after the trial court held a hearing on Friendly Village's request for a preliminary injunction. The court did not issue the temporary restraining order.

On or about January 10, 2008, the parties and their experts met at the site to inspect the properties and discuss their dispute. Although SFL already had installed some shoring along the property line to support the vertical cuts it had made during its grading and excavation efforts, Friendly Village did not believe the shoring was adequate and asserted the lack of adequate shoring was causing the settlement and cracking along the property line. SFL did not believe it was required to provide any shoring at all, as no governmental entity had required it. Nonetheless, SFL agreed to install even more shoring along the property line, wherever the cut was four feet high or greater, at a cost to SFL of $400,000. SFL installed the additional shoring before trial.

About 10 days before trial, SFL learned Friendly Village was going to seek $5,000,000 in damages to construct a shoring wall along the property. Friendly Village continued to assert the shoring SFL had installed was inadequate. Moreover, Friendly Village anticipated SFL might remove the temporary shoring it had installed. At oral argument in this appeal, Friendly Village conceded it knew before trial commenced that SFL had secured a permit to build a permanent retaining wall along the property line. Also before trial, SFL informed Friendly Village the permanent retaining wall would

7

serve as the rear wall of the buildings SFL was constructing on its property. In opposition to the anti-SLAPP motion, SFL presented evidence demonstrating, without construction of the permanent retaining wall, there would be no storage facility—the sole planned use for SFL's property.

Trial commenced on February 2, 2009. After Friendly Village's opening statement, the trial court granted SFL's motion for nonsuit as to Friendly Village's conversion cause of action. After SFL presented its defense case, the court granted nonsuit as to Friendly Village's cause of action for negligent interference with prospective economic advantage, and entered directed verdict on Friendly Village's trespass and nuisance causes of action. Thus, the only cause of action that went to the jury was negligence, and the jury found in favor of SFL on that cause of action. After the jury returned its verdict, the court heard evidence on Friendly Village's cause of action for injunctive relief, which the court had previously bifurcated. The court denied the request for a permanent injunction.

At trial in the underlying action, Friendly Village presented statements supporting two items of damages, a plumbing invoice in the amount of $786.05 for work on the nicked water line, and a $4-5 million estimate for building a retaining wall along the southern property line. SFL's witnesses conceded its construction work caused two or three small fissures on Friendly Village's side of the property line. The fissures were filled in with dirt and repaired at no cost to Friendly Village. SFL's witnesses denied the fissures had caused any damage to Friendly Village's property.

Friendly Village appealed the judgment in the underlying action, contending "the trial court improperly limited the evidence in support of its case when the trial court erroneously granted five motions in limine." (*Friendly Village Mobile Associates v. SFL Paramount* (Dec. 29, 2010, B216049) [nonpub. opn.], p. 2.) Division Five of this appellate district concluded the trial court did not err and affirmed the judgment.

**Present Action**

On December 28, 2012, SFL filed this malicious prosecution action against Friendly Village, based on Friendly Village's filing and continued pursuit of the

8

underlying action. In its complaint, SFL asserts: "Prior to and during the litigation [in the underlying action], it was patently clear that the problems with the Mobile Home Park had been occurring long before SFL began construction work and that [Friendly Village] knew that the problems could not have been caused by SFL. [Friendly Village] saw an opportunity to try to collect money from SFL for damage to the Mobile Home Park that existed before SFL began construction."

On March 29, 2013, Friendly Village filed an answer to the complaint, and also filed an anti-SLAPP motion under section 425.16, asking the trial court to strike SFL's complaint. In the motion, Friendly Village argued SFL's malicious prosecution cause of action arises from protected activity within the meaning of the anti-SLAPP statute, and SFL cannot demonstrate a probability of prevailing on the cause of action because it cannot show Friendly Village brought the prior action without probable cause and with malice.

In its written opposition to the anti-SLAPP motion, SFL conceded its malicious prosecution cause of action arises from protected activity but urged the trial court to deny the anti-SLAPP motion because it can demonstrate a probability of prevailing on that cause of action. SFL argued, "The fact that SFL's construction may have caused a couple of minor problems common with any construction project, does not justify a $5,000,000.00 lawsuit against SFL for damage that [Friendly Village] knew SFL had not caused."

On May 29, 2013, the trial court heard oral argument on Friendly Village's anti-SLAPP motion, and issued an order denying the motion and ruling on SFL's objections to Friendly Village's evidence. On appeal, Friendly Village does not challenge the ruling sustaining some of SFL's evidentiary objections.

## DISCUSSION

### Standard of Review

"Review of an order granting or denying a motion to strike under section 425.16 is de novo." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).) "We consider 'the pleadings, and supporting and opposing affidavits . . . upon

9

which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'" (*Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3.)

**Section 425.16**

Under section 425.16, a party may move to dismiss "certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity." (*Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1420-1421.) Section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

In evaluating an anti-SLAPP motion, we conduct a two-step analysis. First, we must decide whether the defendant "has made a threshold showing that the challenged cause of action arises from protected activity." (*Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 488.) For these purposes, protected activity "includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Second, if the defendant makes this threshold showing, we decide whether the plaintiff "has demonstrated a probability of prevailing on the claim." (*Taheri Law Group*

10

*v. Evans*, *supra*, 160 Cal.App.4th at p. 488.) To satisfy its burden, the plaintiff "'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" (*Soukup*, *supra*, 39 Cal.4th at p. 291.) The trial court must deny an anti-SLAPP motion if "'"the plaintiff presents evidence establishing a prima facie case which, if believed by the trier of fact, will result in a judgment for the plaintiff. [Citation.]"'" (*Robinzine v. Vicory*, *supra*, 143 Cal.App.4th at p. 1421.) At this stage of the proceedings, the plaintiff "need only establish that his or her claim has 'minimal merit' [citation] . . . ." (*Soukup*, *supra*, 39 Cal.4th at p. 291.) Although "'the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'" (*Ibid.*)

**Malicious Prosecution Cause of Action**

SFL does not dispute its malicious prosecution cause of action arises from protected activity within the meaning of the anti-SLAPP statute. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 736-741.) The issue on appeal is whether SFL has demonstrated a probability of prevailing on its malicious prosecution claim.

To establish a malicious prosecution cause of action, a plaintiff must demonstrate a prior action "'(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [its], plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' [Citations.]" (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871-872.) A party may be held liable on a malicious prosecution cause of action not only for commencing an action without probable cause, but also for "continuing to prosecute a lawsuit discovered to lack probable cause." (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 973.)

Friendly Village argues SFL cannot demonstrate a probability of prevailing on its malicious prosecution claim because it cannot establish Friendly Village brought the

11

prior action without probable cause and with malice.  Friendly Village does not dispute SFL can establish the first element of its malicious prosecution claim—that Friendly Village commenced the underlying action and pursued that action until it terminated in SFL's favor.

As explained more fully below, we find SFL has presented evidence establishing a prima facie case of malicious prosecution and if that evidence is credited by the trier of fact a judgment in favor of SFL will result.  Friendly Village's evidence does not defeat SFL's attempt to establish evidentiary support for its malicious prosecution claim as a matter of law.  (See *Soukup*, *supra*, 39 Cal.4th at p. 291.)

**Lack of probable cause**

"Probable cause is a low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely unlikely to succeed.  '[T]he standard of probable cause to bring a civil suit [is] equivalent to that for determining the frivolousness of an appeal [citation], i.e., probable cause exists if "any reasonable attorney would have thought the claim tenable." [Citation.]  This rather lenient standard for bringing a civil action reflects "the important public policy of avoiding the chilling of novel or debatable legal claims." [Citation.]  Attorneys and litigants . . . "'have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . .'" [Citation.]  Only those actions that "'any reasonable attorney would agree [are] totally and completely without merit'" may form the basis for a malicious prosecution suit. [Citation.]' [Citation.]" (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047-1048.)  "[A] malicious prosecution suit may be maintained where only one of several claims in the prior action lacked probable cause" or "where most but not all of the amount sought [in damages] in the prior action was claimed without probable cause." (*Citi-Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.* (2003) 114 Cal.App.4th 906, 914.)

SFL presented evidence demonstrating:  The mobile home park on Friendly Village's property was built on top of a garbage dump.  The effects of building on top of garbage—settlement and cracking concrete—were open and obvious throughout Friendly

12

Village's property before SFL began grading and excavating the adjacent property. For example, water hydrants on Friendly Village's property stuck out of the ground two to three feet or more because the ground underneath the hydrants had settled. The mobile homes near the southern property line Friendly Village shared with SFL had a sewer line running underneath them which pushed the center of those homes up as the soil around the sewer line settled or dropped, causing the concrete to crack.

SFL performed the grading and excavation work on its property in accordance with permits issued by several governmental agencies including the City of Long Beach, County of Los Angeles and the AQMD. None of the permits required SFL to install shoring or a retainer wall along the property line. After Friendly Village complained about the lack of shoring during construction, however, SFL installed at its own expense temporary shoring along the entire property line except where the cut was less than four feet. Minor construction problems SFL caused on Friendly Village's property, such as two or three small fissures along the property line, were repaired at no cost to Friendly Village with no lingering damage to Friendly Village's property.

As SFL's experts testified at trial in the underlying action, all of the mobile homes on Friendly Village's property were outside the "zone of influence" of SFL's grading and excavation work, therefore the work could not damage the mobile homes even if there were a total and complete slope failure, which did not occur. Nonetheless, before trial, SFL offered to pay each homeowner along the property line $10,000 to pay for the re-leveling of the home and to landscape the back of the home, at a total cost to SFL of approximately $125,000. Friendly Village rejected SFL's offer.

Although SFL conveyed to Friendly Village the reasons its claims lacked merit, Friendly Village filed the underlying action and continued to pursue it, seeking $5,000,000 in damages. As evidence, Friendly Village produced a plumbing invoice for $786.05 and a $4-5 million estimate to build a retaining wall along the southern property line. Friendly Village asserted, to build the wall, it would need to temporarily relocate the mobile homes along the property line, remove the garbage from the soil, erect the retaining wall, and then replace the mobile homes. As discussed above, Friendly Village

13

concedes it knew before trial commenced that SFL had obtained a permit to build a permanent retaining wall along the property line. Moreover, before trial, SFL informed Friendly Village the permanent retaining wall would serve as the rear wall of the buildings SFL was constructing on its property.

Based on the evidence SFL presented in opposition to the anti-SLAPP motion, we find SFL has shown a probability of proving Friendly Village filed the underlying action and/or continued to pursue it without probable cause. SFL presented evidence demonstrating Friendly Village knew the problems for which it sought to recover damages from SFL in the underlying action—damage to the soils, hardscape and structures at Friendly Village's property—were the result of the mobile home park being built on refuse, not SFL's grading and excavation work. To the extent Friendly Village had sustained minor damage for which SFL was responsible—e.g., the $786.05 plumbing invoice—SFL still presented evidence demonstrating the vast majority of Friendly Village's damages claim was brought without probable cause. By the time the case went to the jury, Friendly Village was asking for $4-5 million to build a permanent retaining wall when it knew before trial even commenced that SFL had obtained a permit to build a permanent retaining wall, planned to build the rear walls of the storage facility as a permanent retaining wall, and had installed a temporary retaining wall at a cost of $400,000.

In support of its anti-SLAPP motion, Friendly Village did not present evidence which defeats SFL's attempt to establish evidentiary support for the lack of probable cause element as a matter of law. We acknowledge Friendly Village presented competing evidence (e.g., the three-page report from GeoSoils, Inc., discussed above, concluding based upon a visual inspection that "distress to the site" was caused by SFL's grading and excavation work). But we do not "'*weigh* the credibility or comparative probative strength of competing evidence'" in deciding an anti-SLAPP motion. (*Soukup*, *supra*, 39 Cal.4th at p. 291.)

Friendly Village argues its reliance on the advice of counsel defeats SFL's attempt to establish its malicious prosecution claim as a matter of law. "'Probable cause may be

14

established by the defendants in a malicious [prosecution] proceeding when they prove that they have in good faith consulted a lawyer, have stated all the facts to him, have been advised by the lawyer that they have a good cause of action and have honestly acted upon the advice of the lawyer.' [Citations.]" (*DeRosa v. Transamerica Title Ins. Co.* (1989) 213 Cal.App.3d 1390, 1397-1398.) SFL has presented evidence indicating Friendly Village knew before filing the underlying action that the claimed problems at its property were not the result of SFL's grading and excavation work, but the pre-existing condition of the soil on which the mobile home park was built. Again, Friendly Village presented competing evidence (e.g., declarations from a principal of Friendly Village and counsel for Friendly Village in the underlying action supporting the advice of defense counsel). On the record before us, however, we cannot find as a matter of law that Friendly Village consulted its lawyers in good faith and honestly acted upon the advice of its lawyers in filing and continuing to pursue the underlying action.

Friendly Village also argues the denial of SFL's motion for nonsuit, made at the conclusion of Friendly Village's opening statement, establishes probable cause as a matter of law. Friendly Village cites cases indicating the denial of a motion on the merits (summary judgment or nonsuit), after a presentation of evidence, establishes probable cause as a matter of law. (See, e.g., *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 546-547.) Here, the trial court partially denied SFL's motion for nonsuit before either party had presented any evidence. This did not establish probable cause as a matter of law because it did not show Friendly Village could substantiate its claims. (See *ibid.*) In any event, the trial court granted SFL's motion for nonsuit as to the cause of action for conversion at the conclusion of Friendly Village's opening statement. As discussed above, "a malicious prosecution suit may be maintained where only one of several claims in the prior action lacked probable cause [citation] . . . ." (*Citi-Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.*, *supra*, 114 Cal.App.4th at p. 914.)

**Malice**

"For purposes of a malicious prosecution tort, malice relates to the subjective intent or purpose with which the defendant acted in initiating the prior action." (*Padres*

*L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 522.) To establish malice, the plaintiff must show the defendant "had an improper motive in bringing the prior action[]." (*Ibid*.) "Although a lack of probable cause, standing alone, does not support an inference of malice, malice may still be inferred when a party knowingly brings an action without probable cause." (*Id.* at p. 522.) Malice also may "be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause." (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226.)

Settlement discussions may be used in a malicious prosecution action to show that the plaintiff had an improper motive in bringing or continuing to litigate the prior action. (See *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 219.) An improper motive may be shown where "'the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.' [Citation.]" (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 383.)

As discussed above, in opposition to the anti-SLAPP motion SFL presented evidence indicating Friendly Village filed and continued to pursue the underlying action, seeking damages for problems at its property it knew were not caused by SFL's grading and excavation work. SFL tried to work with Friendly Village, installing shoring along the property line at a cost to SFL of $400,000, even though it did not believe the shoring was necessary or required, and offering to pay a total of $125,000 to the homeowners along the property line to re-level and landscape their homes, even though it did not believe its work had caused any damage to their homes. Friendly Village rejected SFL's offer, instead seeking $5,000,000 in the underlying action. At the time the case went to the jury, Friendly Village claimed it was asking for $5,000,000 to build a permanent retaining wall although it knew before trial that SFL planned to build a permanent retaining wall.

Based on the evidence SFL presented, we find SFL has shown a probability of proving Friendly Village filed the underlying action with malice. Friendly Village did not present evidence which defeats SFL's attempt to establish evidentiary support for the malice element as a matter of law.

16

The trial court did not err in denying Friendly Village's anti-SLAPP motion. SFL established its malicious prosecution cause of action has at least the minimal merit required to demonstrate a probability of prevailing and survive an anti-SLAPP motion. (*Soukup*, *supra*, 39 Cal.4th at p. 291.)

**DISPOSITION**

The order is affirmed. Respondent is entitled to recover costs on appeal.

NOT TO BE PUBLISHED.

CHANEY, Acting P. J.

We concur:

JOHNSON, J.

MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.